## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA,
## NORTHERN DIVISION

**GEORGE CLINTON**

                *Plaintiff,*

   **v.**

**ARMEN BOLADIAN;**
**BRIDGEPORT MUSIC, INC.;**
**WESTBOUND RECORDS, INC.;**
**NINE RECORDS, INC.,**
**SOUTHFIELD MUSIC, INC.; and**
**EASTBOUND RECORDS, INC.**

                *Defendants.*

Civil Action No. _____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff George Clinton, ("George Clinton" or "Clinton") through undersigned counsel, files these claims against Defendants Armen Boladian ("Boladian"), Bridgeport Music, Inc. ("Bridgeport"), Westbound Records, Inc. ("Westbound"), Nine Records, Inc. ("Nine Records"), Southfield Music, Inc. ("Southfield"), and Eastbound Records, Inc. ("Eastbound") (together, "Defendant Business Entities") (Defendant Business Entities collectively with Boladian, "Defendants"), stating as follows:

## **INTRODUCTION**

1.    GRAMMY award-winning singer, songwriter, record producer, bandleader, and visionary George Clinton ("Clinton") is one of the most influential artists alive today. An American icon, his works have been and are celebrated across the globe.

2.    In 2019 Clinton received the GRAMMY Lifetime Achievement Award at the GRAMMY Salute to Music Legends.

3.    After launching his career in the 1960s, Clinton authored and recorded thousands of songs and sound recordings while painstakingly building one of the richest and most sampled music catalogs[1] ("catalog") in United States history.

4.    Clinton achieved his first top ten hit with his doo-wop and R&B band, The Parliaments, after the release of their record, "(I Just Wanna) Testify" in 1967.

5.    His songs "Flashlight", of the Parliament album (1977); "Mothership Connection (Star Child)", of the Parliament album (1975); "I'd Rather Be With You" of the Bootsy's Rubber Band album (1976); "(Not Just) Knee Deep" of the Funkadelic album (1979); and "Atomic Dog" of the George Clinton album (1982) are some of the most sampled songs in United States History.

6.    Following his initial worldwide success in 1967, Defendants developed a decades long scheme to defraud Clinton and successful artists like Clinton. This scheme

---

[1] A music catalog is a collection of songs (i.e., a list of musical compositions) and sound recordings originating from the same creator.

involved (1) seeking out Clinton and developing a business relationship with the young new artist, (2) fraudulently acquiring rights to Clinton's catalog, (3) adding fictitious songwriters to dilute Clinton's share in songwriters royalties that BMI would typically allocate to songwriters, (4) collecting royalties[2] from Clinton's catalog while fraudulently denying Clinton tens of millions of dollars of royalties[3] to which he is owed, (5) signing agreements on behalf of Clinton without his knowledge or express consent and retaining millions of dollars in licensing fees, royalties, and monies, (6) failing to provide the required accounting of royalties owed to Clinton per industry standard[4], and (7) suing other producers and artists who sample songs to which Defendants fraudulently acquired rights.

7.    As part of this scheme, Defendants fraudulently obtained the copyrights to approximately 90% of Clinton's catalog.

---

[2] Royalties are monies generated from the licensing and copyright of songs and recordings. These monies serve as a primary form of payment for musicians, who are typically the asset owner of the right to use their music.

[3] Music royalties are compensatory payments received by rights holders (songwriters, composers, recording artists, and their respective representatives) in exchange for the licensed use of their music.

[4] Under common industry standard Plaintiff should receive accounting twice a year and then within 90 days of each accounting, Plaintiff would receive royalty payment.

8.     Defendants have repeatedly violated industry standards by failing to provide accounting reports of the royalties collected from songs in Clinton's catalog registered with BMI and ASCAP[5].

9.     To this day, Defendants continue to unlawfully copy, sell, license, and distribute George Clinton's music and image, in violation of Federal and State laws, as set forth in detail below.  Clinton has suffered and continues to suffer significant economic injury as a result of Defendants wrongful conduct and seeks redress before this Honorable Court.

## PARTIES

10.   Plaintiff Clinton is an individual residing in the State of Florida.

11.   Defendant Armen Boladian is an individual, residing in the State of Michigan. Boladian is the sole owner of several entertainment companies, including but not limited to, Bridgeport Music, Inc., Westbound Records, Inc., Nine Records, Inc., Southfield Music, Inc., and Eastbound Records, Inc.

12.   Defendant Bridgeport Music, Inc. is a Michigan corporation.  Its principal office is located in West Bloomfield, Michigan.  Bridgeport is owned and operated by Defendant Boladian who is the President, Director, and Treasurer.

---

[5] BMI (Broadcast Music, Inc) and ASCAP (American Society of Composers, Authors and Publishers) are Performing Rights Organizations that represent songwriters, composers, and music publishers that collect performance royalties.

13.   Defendant Westbound Records, Inc. is a Michigan corporation.  Its principal office is also located in West Bloomfield, Michigan.  Westbound is owned and operated by Defendant Boladian who is the President, Director, and Treasurer.

14.   Defendant Nine Records, Inc. is a Michigan corporation.  Its principal office is also located in West Bloomfield, Michigan.  Nine Records is owned and operated by Defendant Boladian who is the President, Director, and Treasurer.

15.   Defendant Southfield Music, Inc. is a Michigan corporation.  Its principal office is also located in West Bloomfield, Michigan. Southfield is owned and operated by Defendant Armen Boladian who is the President, Director, and Treasurer.

16.   Defendant Eastbound Records, Inc. is a Michigan corporation.  Its principal office is located in West Bloomfield Michigan.  Eastbound is owned and operated by Defendant Armen Boladian who is the President, Director, and Treasurer.

## JURISDICTION AND VENUE

17.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because Defendants are citizens of a state other than the state in which Plaintiff is a citizen.

18.   The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this action concerns a federal question regarding copyright law.

19.   This Court has specific personal jurisdiction over the Defendants because Defendants committed and continue to commit tortious acts within the State of Florida under Fla. Stat. Ann. § 48.193(1)(a)(2).

20.   This Court has supplemental jurisdiction under 28 U.S.C. §1367(a) over Plaintiff's state law claims because all claims alleged herein form part of the same case or controversy.

21.   Further, Defendants have purposefully availed themselves of the privileges of conducting activities within the State of Florida by transacting business within the State; committing tortious acts within the State; committing the actions alleged in this lawsuit directed at Clinton, an individual residing in the State; and deriving substantial revenue from their deliberate course of conduct targeting the State of Florida.   Defendants continue these actions today.   As such Defendants are subject to personal jurisdiction here.

22.   Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## FACTUAL ALLEGATIONS

### A. Clinton: Artist, Icon, Pioneer of Funk, and the Hip-Hop Godfather.

23.   Clinton is an iconic musician, singer, songwriter, record producer, and bandleader, and is recognized as one of the foremost pioneers of Funk music.

6

24.   Clinton was inducted into the Rock and Roll Hall of Fame in 1997 and awarded the GRAMMY's Lifetime Achievement Award at the 2019 GRAMMY Salute to Music Legends.

25.   As a testament to his musical genius, he is one of the most sampled artists in music history (earning him the title of the Godfather of Hip-Hop). His works, including but not limited to, "Atomic Dog," "Flash Light," "P.Funk (Wants to Get Funked Up)," "The Motor Booty Affair," "Aquaboogie," "Give Up The Funk," "Mothership Connection," "Sir Nose D'Voidoffunk" and "Big Bang Theory" have been heavily sampled by artists across numerous musical genres.

26.   In 1968, recognizing social change and the growth of Rock and Roll, Clinton created a new Black rock band known as "Funkadelic".

27.   By the late 1970s, Clinton's artistic genius and revolutionizing inspiration earned him "superstar" status. He was releasing four to six albums per year through major record labels, producing multiple side acts in addition to his two main acts, Parliament and Funkadelic, all while touring nonstop at stadium capacity, with a wildly elaborate stage production.

28.   In 1973, Clinton created a new act – "Parliament", which was later combined with Funkadelic in early 1975. The combination was hugely successful, releasing 3-4 albums per year with chart topping hits and touring nonstop to sold-out crowds at stadium capacity with a large market of devoted fans.

**B. Defendant Boladian Successfully Schemes to Defraud Clinton.**

29.   According to information and belief, Defendant Boladian expressed his views that Black artists lacked the education and intelligence to understand issues such as copyright infringement and legal proceedings - accordingly, he felt emboldened and entitled to defraud artists like Clinton.

30.   From 1968 through 1975, and 1981 through 1990, Boladian was Clinton's business partner, publishing administrator, financial consultant, and agent.

31.   Boladian formed Defendant Bridgeport Music, Inc., in 1969 "[t]o engage in the business of publishing music." [6]

32.   Boladian further created entertainment companies Westbound in 1969 and Nine Records, Southfield, and Eastbound in 1973.

33.   Boladian is the sole owner and proprietor of each of his entertainment companies including Defendant Business Entities.   As the President, Director, and Treasurer, he functions as the sole decision maker for Bridgeport, Westbound, Nine Records, Southfield, and Eastbound, including but not limited to day-to-day business operations, matters of corporate governance and financial decisions.

---

[6] As set forth in Bridgeport's articles of incorporation.

34.   Upon information and belief, the Defendant Business Entities are a "one-man" operation, run solely by Armen Boladian.  The Defendant Business Entities employ little to no staff and have no assets other than copyrights.[7]

35.   Boladian is known throughout the music industry as a "copyright troll[8]," meaning that he collects copyrights to various catalogs, holds on to the rights, then files lawsuits to get money from producers and musicians who sample[9] the songs he looted the rights to (despite how miniscule the sampling may be).

36.   As a copyright troll, Defendants did not need to employ any staff or serve any function other than to assert copyright infringement claims for musical works that they fraudulently acquired and to maintain their only assets which comprise this portfolio of copyrighted musical works.

37.   After decades of employing his copyright scheme, Boladian has earned a reputation for exploiting young, gifted artists by utilizing his industry knowledge to financially benefit from the illegal sampling and distribution from the work of said artists.

---

[7]Tim Wu, *Jay-Z Versus the Sample Troll*, Slate, November 16, 2006, https://slate.com/culture/2006/11/the-shady-one-man-corporation-that-s-destroying-hip-hop.html.

[8] *See Id.* ("Similar to its cousins the patent trolls, Bridgeport and companies like it hold portfolios of old rights (sometimes accumulated in dubious fashion) and use lawsuits to extort money from successful music artists for routine sampling, no matter how minimal or unnoticeable…")

[9] Sampling is a technique in which an artist takes a piece of a song, and then alters, mutates, or distorts it to create a new song.

38.   Boladian has filed several lawsuits against artists based on their improper and illegal sampling of Clinton's music, including Clinton himself for sampling his own work.  For example, in *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229 (M.D. Tenn. 2001), Bridgeport sued nearly 800 artist-defendants seeking monetary damages and other relief for sampling Clinton's music.  Interestingly, Clinton, the rightful owner of said catalog, has never been included as a plaintiff in these lawsuits nor has he received any portion of the millions secured by Boladian.

39.   In addition to his sampling schemes, Boladian relied on a multitude of deceptive plots to hoard royalties and steal masters from Clinton and other Black artists. These stolen, intangible assets and copyrighted materials are Defendants only business assets.

### C. Boladian Exceeds His Authority as An Agent of Clinton to Fraudulently Acquire Rights to Clinton's Catalog.

40.   Over the course of Clinton's decades long relationship with Boladian, Boladian acted in various roles including as publisher, publishing administrator, financial consultant, and agent.  In this capacity, Boladian had a duty to manage the copyrights to Clinton's catalog, register Clinton's songs with the proper entities, and collect royalties generated by Clinton's songs—without retaining any ownership or control over the songs he was administering on Clinton's behalf.  Defendants had a duty to collect royalties, fees, and monies; provide an accurate accounting of such royalties; and pay Clinton his

rightful share of the royalties.  Instead, Defendants have consistently withheld millions of dollars in royalties, monies, and fees that are rightfully owned by Clinton.

41.   Defendants failed to properly act as Clinton's agent by engaging in abusive, deceptive, and fraudulent practices targeted at Clinton with the sole purpose of stealing and misappropriating funds and assets from George Clinton and capitalizing on his success.  For instance, Boladian induced Clinton into signing blank and boiler plate agreements under the false and repeated affirmative representations to Clinton that he would handle those contractual agreements in accordance with Clinton's business interests.

42.   Boladian frequently exceeded his agent authority and used Clinton's signature on blank and boiler plate agreements to grant Defendants rights to Clinton's catalog.

43.   Boladian frequently executed contracts regarding Clinton's catalog with record companies and other third parties on behalf of Clinton, without Clinton's knowledge, his explicit or implied consent, or any actual authority from Clinton.

44.   Long after Clinton ended his business relationship with Defendants, Boladian continued to hold himself out as the publisher, administrator, and representative of Clinton in front of record companies and other third parties and promised either through contract or by common industry practice and standards to provide accounting, writer's credit, mechanical royalties, songwriter's royalties, and other royalties to Clinton.

45.   Upon information and belief, between 1982 and 1985, Defendants fabricated multiple versions of an agreement assigning themselves, with each new version, additional rights and shares of Clinton's catalog.

46.   These fraudulent agreements increased Defendant's shares in the royalties, while diverting profits from the catalog to Defendants and decreasing Clinton's assets and profits.

47.   Boladian systematically and intentionally failed and fails to inform Clinton of numerous contractual agreements which he has executed, ostensibly on Clinton's behalf, in excess of his authority and/ or without Clinton's knowledge and consent, and for which Defendants have been the wrongful recipients of royalty payments.   Boladian never provided Clinton with copies of any of such agreements.

48.   To date, despite demands for an accounting, Boladian has provided little to no accounting of any royalties or sums he has collected that are rightfully owed to Clinton.

### D. Boladian Utilizes Fake Names and Pseudonyms to Further Defraud Clinton.

49.   Boladian' s fraudulent conduct also included creating and using fake names and pseudonyms to fraudulently identify imaginary additional writers and owners on copyright registrations of songs included in Clinton's catalog.

50.  According to information and belief, Boladian has utilized the names "L. Crane[10]" and "B. Blaine[11]" in the copyright registration. Neither L. Crane or B. Blaine are actual individuals, and as such, could not possibly have any role in the creation of any of Plaintiff's songs.

51.  By ensuring that imaginary additional writers and owners were a part of the copyright registration for songs in Clinton's catalog, Defendants diluted Clinton's shares in his own writer's credits, songwriter's rights, and mechanical royalties.

52.  Boladian engaged in this fraudulent exercise of creating imaginary writers and owners and adding them to the BMI and ASCAP song catalogs to dilute Clinton's songwriter's royalty shares.

53.  In addition, Boladian would also pay third parties to claim ownership of Plaintiff's work to defraud Plaintiff of royalties derived from such works. For example, Boladian paid Mark Bass to have him falsely claim "Anybody Get Funked Up" as his own to Defraud Plaintiff of royalty shares in this song.

---

[10] The pseudonym L. Crane has been used in copyright for Clinton songs, including but not limited to, "Call Jesus (Tear the Roof off the sucker)" (L. Crane (ASCAP affiliation) is mentioned as writer with a 20% share along with Clinton and other writers), "Caper for the Paper" (L. Crane (ASCAP) 15% share with Clinton and others), "JURNEEUVASTREETKRIMINO" (L. Crane 10% share (ASCAP) with Clinton and other writers), "Pimps N Macks" (L. Crane 12% share (ASCAP) with Clinton and others), and "Who Dat Single" (L. Crane 8% share (ASCAP) with Clinton and others).

[11] Upon information and belief, the pseudonym, "B. Blaine" has been used by Defendant Boladian in copyright registrations and cite registrations.

54.  Boladian regularly deflated or omitted the amount of royalties he was receiving from Clinton's catalog on formal documents and reports.  These royalties derived from direct online downloads, U.S. and international sales, sampling, and third-party licensing.

55.  Throughout the years and through Boladian's skillful manipulation, Clinton was unaware of Boladian's misconduct – which has continued into the present.

56.  Boladian not only failed to carry out his duties and act in Clinton's best interest, but affirmatively used his position and unfettered access to Clinton's catalog to defraud Clinton of his royalties and shares for his sole benefit.

### E. Defendants Fraudulent Use of Clinton's Catalog Continues to this Day.

57.  To this day, Clinton continues to become aware of misrepresentations and omissions that Defendants continue to carry out with respect to his catalog.

58.  As Defendants actively concealed their wrongful conduct and continue to do so, Clinton only became aware of above-referenced wrongful conduct wherein he would happen to see songs from his catalog broadcasted on television; integrated into movies, television series, or other form of televised or broadcasted shows; sampled into a song or musical creation; or streamed on a digital platform without his knowledge, consent, or authority.  For example, "Give Up the Funk (Tear the Roof off the Sucker)" used as part of the on-ride soundtrack for Guardians of the Galaxy – Mission: BREAKOUT! At Disney California Adventure; "Atomic Dog" was sampled in "Digga Digga Dog" in 102

Dalmatians movie; "Give Up The Funk" (Tear the Roof Off) used as a track in The Purge: Election Year; and advertisements for Apple and WhatsApp just to name a few.

59.  Defendants were and continue to collect licensing fees, royalties, and monies from said unauthorized usage of his catalog without his consent or authorization.

60.  Clinton has served numerous notices and demands (as recently as December of 2023) to Defendants for all BMI and ASCAP accounting reports and payment of all royalties and monies owed to him and rightfully owned by him to no avail.

61.  Defendants have, as described in the preceding paragraphs, engaged in illegal and wrongful conduct in the execution of improper contracts ostensibly on Clinton's behalf, the wrongful securing, retention and use of royalties to which Clinton would have been entitled as it relates to the songs included in his catalog as identified in the chart:

| PUBLICATION | ARTIST | ALBUM TITLE | SONG TITLE |
|---|---|---|---|
| 1967 | The Parliaments | I wanna Testify | Good Old Music |
| 1970 | Funkadelic | Funkadelic | Music for My Mother |
| 1970 | Funkadelic | Funkadelic | Qualify and Satisfy |
| 1970 | Funkadelic | Funkadelic | What is Soul |
| 1970 | Funkadelic | Funkadelic | As Good as I Can Feel |
| 1970 | Funkadelic | Free your Mind…And Your Ass Will Follow | Some More |
| 1970 | Funkadelic | Funkadelic | Mommy, What's a Funkadelic |
| 1970 | Funkadelic | Funkadelic | Good Old Music |
| 1970 | Funkadelic | Funkadelic | Music for My Mother |
| 1970 | Funkadelic | Funkadelic | Music for My Mother (instrumental) |

| 1970 | Funkadelic | Free your Mind…And Your Ass Will Follow | Free Your Mind and Your Ass Will Follow |
|---|---|---|---|
| 1970 | Funkadelic | Free your Mind…And Your Ass Will Follow | Friday Night, August 14th |
| 1970 | Funkadelic | Free your Mind…And Your Ass Will Follow | Funky Dollar Bill |
| 1970 | Funkadelic | Free your Mind…And Your Ass Will Follow | Fish, Chips and Sweat |
| 1970 | Funkadelic | Free your Mind…And Your Ass Will Follow | I Wanna Know If It's Good to You |
| 1970 | Funkadelic | Free your Mind…And Your Ass Will Follow | I Wanna Know If It's Good to You (bonus track on re-issue) |
| 1970 | Funkadelic | Free your Mind…And Your Ass Will Follow | I Wanna Know If It's Good to You (instrumental) |
| 1970 | Parliament | Osmium | There Is Nothing Before Me But Thang |
| 1971 | Funkadelic | Maggot Brain | You and Your Folks, Me and My Folks |
| 1971 | Funkadelic | Maggot Brain | Wars of Armageddon |
| 1971 | Funkadelic | Maggot Brain | Can You Get to That |
| 1971 | Funkadelic | Maggot Brain | Hit It and Quit It |
| 1971 | Funkadelic | Maggot Brain | Maggot Brain |
| 1971 | Funkadelic | Maggot Brain | Super Stupid |
| 1972 | Funkadelic | America Eats Its Young | Wake Up |
| 1972 | Funkadelic | America Eats Its Young | You Hit the Nail on the Head |
| 1972 | Funkadelic | America Eats Its Young | Pussy |
| 1972 | Funkadelic | America Eats Its Young | America Eats Its Young |
| 1972 | Funkadelic | America Eats Its Young | If You Don't Like the Effects, Don't Produce the Cause |
| 1972 | Funkadelic | America Eats Its Young | Everybody Is Going to Make It This Time |
| 1972 | Funkadelic | America Eats Its Young | A Joyful Process |

| 1972 | Funkadelic | America Eats Its Young | Loose Booty |
|------|------------|----------------------|-------------|
| 1972 | Funkadelic | America Eats Its Young | Biological Speculation |
| 1972 | Funkadelic | America Eats Its Young | That Was My Girl |
| 1972 | Funkadelic | America Eats Its Young | Balance |
| 1972 | Funkadelic | America Eats Its Young | Miss Lucifer's Love |
| 1973 | Funkadelic | Cosmic Slop | Nappy Dugout |
| 1973 | Funkadelic | Cosmic Slop | You Can't Miss What You Can't Measure |
| 1973 | Funkadelic | Cosmic Slop | Cosmic Slop |
| 1973 | Funkadelic | Cosmic Slop | No Compute |
| 1973 | Funkadelic | Cosmic Slop | Can't Stand the Strain |
| 1973 | Funkadelic | Cosmic Slop | March to the Witch's Castle |
| 1973 | Funkadelic | Cosmic Slop | Trash A-Go-Go |
| 1973 | Funkadelic | Cosmic Slop | Let's Make It Last |
| 1974 | Parliament | Up for the down stroke | Up for the Down Stroke |
| 1974 | Parliament | Up for the down stroke | I Can Move You |
| 1974 | Parliament | Up for the down stroke | Presence of a Brain |
| 1974 | Parliament | Up for the down stroke | All Your Goodies Are Gone |
| 1974 | Funkadelic | Standing on the Verge of Getting It On | Alice in My Fantasies |
| 1974 | Funkadelic | Standing on the Verge of Getting It On | I'll Stay |
| 1974 | Funkadelic | Standing on the Verge of Getting It On | Sexy Ways |
| 1974 | Funkadelic | Standing on the Verge of Getting It On | Standing on the Verge of Getting It On |
| 1974 | Funkadelic | Standing on the Verge of Getting It On | Jimmy's Got a Little Bit of Bitch in Him |

| 1974 | Funkadelic | Standing on the Verge of Getting It On | Good Thoughts, Bad Thoughts |
|------|-----------|---------------------------------------|------------------------------|
| 1974 | Parliament | Up for the down stroke | The Goose |
| 1974 | Parliament | Up for the down stroke | Whatever Makes Baby Feel Good |
| 1975 | Parliament | Chocolate City | Chocolate City |
| 1975 | Parliament | Chocolate City | Ride On |
| 1975 | Parliament | Chocolate City | Together |
| 1975 | Parliament | Mothership Connection | Supergroovalisticprosifunksticati on |
| 1975 | Funkadelic | Let's Take It to the Stage | Be My Beach |
| 1975 | Funkadelic | Let's Take It to the Stage | Let's Take It to the Stage |
| 1975 | Funkadelic | Let's Take It to the Stage | The Song Is Familiar |
| 1975 | Parliament | Chocolate City | Side Effects |
| 1975 | Parliament | Mothership Connection | P.Funk (Wants to get Funked Up) |
| 1975 | Parliament | Mothership Connection | Handcuffs |
| 1975 | Funkadelic | Let's Take It to the Stage | Good To Your Earhole |
| 1975 | Funkadelic | Let's Take It to the Stage | Atmosphere |
| 1975 | Parliament | Chocolate City | What Comes Funky |
| 1975 | Parliament | Chocolate City | If It Don't Fit (Don't Force It) |
| 1975 | Parliament | Mothership Connection | Mothership Connection (star Child ) |
| 1975 | Parliament | Mothership Connection | Unfunky UFO |
| 1975 | Parliament | Mothership Connection | Night of The Thumpasorous Peoples |
| 1975 | Parliament | Mothership Connection | Give Up The Funk (Tear the Roof Off Sucker |
| 1975 | Parliament | Chocolate City | Let Me Be |

| 1975 | Funkadelic | Let's Take It to the Stage | Better By The Pound |
| 1975 | Funkadelic | Let's Take It to the Stage | No Head No Backstage Pass |
| 1975 | Funkadelic | Let's Take It to the Stage | Stuffs And Things |
| 1975 | Funkadelic | Let's Take It to the Stage | Get Off Your Ass And Jam |
| 1975 | Funkadelic | Let's Take It to the Stage | Baby I Owe You Something Good |
| 1975 | Parliament | Chocolate City | Big Footin' |
| 1976 | Funkadelic | Tales of Kidd Funkadelic | Take Your Dead Ass Home! (Say Som'n Nasty) |
| 1976 | Funkadelic | Hardcore Jollies | If You Got Funk, You Got Style |
| 1976 | Funkadelic | Hardcore Jollies | Adolescent Funk |
| 1976 | Parliament | The Clones Of Dr. Funkenstein | Do That Stuff |
| 1976 | Parliament | The Clones Of Dr. Funkenstein | I've Been Watching you (Move your Sexy Body) |
| 1976 | Parliament | The Clones Of Dr. Funkenstein | Funkin' For Fun |
| 1976 | Funkadelic | Tales of Kidd Funkadelic | Undisco Kidd |
| 1976 | Funkadelic | Tales of Kidd Funkadelic | How Do Yeaw View You? |
| 1976 | Funkadelic | Hardcore Jollies | Comin' Round The Mountain |
| 1976 | Funkadelic | Hardcore Jollies | Smokey |
| 1976 | Funkadelic | Hardcore Jollies | Hardcore Jollies |
| 1976 | Funkadelic | Hardcore Jollies | Soul Mate |
| 1976 | Funkadelic | Hardcore Jollies | Cosmic Slop |
| 1976 | Funkadelic | Hardcore Jollies | You Scared The Lovin' Outta Me |
| 1976 | Parliament | The Clones Of Dr. Funkenstein | Prelude |
| 1976 | Parliament | The Clones Of Dr. Funkenstein | Gettin' To Know You |
| 1976 | Funkadelic | Tales of Kidd Funkadelic | I'm Never Gonna Tell It |

19

| 1976 | Funkadelic | Tales of Kidd Funkadelic | Tales of Kidd Funkadelic (Opusdelite Years) |
|---|---|---|---|
| 1976 | Parliament | The Clones Of Dr. Funkenstein | Dr.Funkenstein |
| 1976 | Parliament | The Clones Of Dr. Funkenstein | Children Of Productions |
| 1976 | Funkadelic | Tales of Kidd Funkadelic | Butt-to-Butt Resuscitation |
| 1976 | Funkadelic | Tales of Kidd Funkadelic | Let's Take It to the People |
| 1976 | Parliament | The Clones Of Dr. Funkenstein | Everything is on the One |
| 1976 | Parliament | The Clones Of Dr. Funkenstein | Gamin' On Ya |
| 1977 | Eddie Hazel | Game, Dames & Guitar Thangs | Frantic Moment |
| 1977 | Eddie Hazel | Game, Dames & Guitar Thangs | So Goes The Story |
| 1977 | Parliament | Live/P.Funk Earth Tour | Dr.Funkenstein's Supergroovalisticprosifunkstication Medley |
| 1977 | Fred Wesley & The Horny Horns | A Blow For Me, A Toot To You | Up For The Down Stroke |
| 1977 | Parliament | Live/P.Funk Earth Tour | P.Funk (Wants To Get Funked Up) |
| 1977 | Parliament | Live/P.Funk Earth Tour | Do that Stuff |
| 1977 | Parliament | Live/P.Funk Earth Tour | The Undisco KIdd ( The girl is Bad) |
| 1977 | Parliament | Funkentelechy Vs.Placebo Syndrome | Wizard of Finance |
| 1977 | Parliament | Live/P.Funk Earth Tour | Mothership Connection (Star Child) |
| 1977 | Parliament | Live/P.Funk Earth Tour | Night of the Thumpasorus Peoples |
| 1977 | Parliament | Live/P.Funk Earth Tour | Tear the roof off the sucker Medley |

| 1977 | Parliament | Funkentelechy Vs.Placebo Syndrome | The Placebo Sydrome |
|------|-----------|-----------------------------------|---------------------|
| 1977 | Parliament | Live/P.Funk Earth Tour | This is the way we Funk With You |
| 1977 | Parliament | Live/P.Funk Earth Tour | The Landing (Of the Mothership) |
| 1977 | Fred Wesley & The Horny Horns | A Blow For Me, A Toot To You | A Blow For Me, A Toot To You |
| 1977 | Parliament | Live/P.Funk Earth Tour | Fantasy Is A Reality |
| 1977 | Bootsy | Ahh...The Name Is Bootsy, Baby! | Preview Side Too |
| 1977 | Bootsy | Ahh...The Name Is Bootsy, Baby! | Munchies For Your Love |
| 1977 | Bootsy | Ahh...The Name Is Bootsy, Baby! | Rubber Duckie |
| 1977 | Bootsy | Ahh...The Name Is Bootsy, Baby! | What's A Telephone Bill? |
| 1977 | Fred Wesley & The Horny Horns | A Blow For Me, A Toot To You | Between Two Sheets |
| 1977 | Bootsy | Ahh...The Name Is Bootsy, Baby! | Ahh...The Name Is Bootsy, Baby! |
| 1977 | Bootsy | Ahh...The Name Is Bootsy, Baby! | Reprise: We Want Bootsy |
| 1977 | Bootsy | Ahh...The Name Is Bootsy, Baby! | The Pinocchio Theory |
| 1977 | Bootsy | Ahh...The Name Is Bootsy, Baby! | Can't Stay Away |
| 1977 | Eddie Hazel | Game, Dames & Guitar Thangs | What About It? |
| 1977 | Fred Wesley & The Horny Horns | A Blow For Me, A Toot To You | Four Play |
| 1977 | Parliament | Funkentelechy Vs.Placebo Syndrome | Bop Gun (Endangered Species) |

| 1977 | Parliament | Funkentelechy Vs.Placebo Syndrome | Flash Light |
|------|-----------|-----------------------------------|-------------|
| 1977 | Parliament | Live/P.Funk Earth Tour | Children of Productions |
| 1977 | Parliament | Live/P.Funk Earth Tour | Dr.Funkenstein |
| 1977 | Parliament | Live/P.Funk Earth Tour | Swing Down, Sweet Chariot |
| 1977 | Parliament | Live/P.Funk Earth Tour | Gamin' on Ya! |
| 1977 | Parliament | Funkentelechy Vs.Placebo Syndrome | Funkentelechy |
| 1977 | Parliament | Funkentelechy Vs.Placebo Syndrome | Sir Nose D'Voidoffunk (Pay Attention) |
| 1978 | Parliament | Motor-Booty Affair | (You're a Fish and I'm a) Water Sign |
| 1978 | Parliament | Motor-Booty Affair | Motor-Booty Affair |
| 1978 | Parliament | Motor-Booty Affair | Deep |
| 1978 | Bernie Worrell | All The Woo In The World | Woo Together |
| 1978 | Brides of Funkenstein | Funk or Walk | Birdie |
| 1978 | Brides of Funkenstein | Funk or Walk | Nappy |
| 1978 | Funkadelic | One Nation Under A Groove | Groovallegiance |
| 1978 | Funkadelic | One Nation Under A Groove | Who Says A Funk Band Can't Play Rock? |
| 1978 | Funkadelic | One Nation Under A Groove | Promentals**tbackwashpsychosis Enema Squad (The Doodoo Chasers) |
| 1978 | Funkadelic | One Nation Under A Groove | Into You |
| 1978 | Funkadelic | One Nation Under A Groove | Cholly (Funk Getting Ready To Roll) |
| 1978 | Parlet | Pleasure Principle | Are You Dreaming? |
| 1978 | Brides of Funkenstein | Funk or Walk | War Ship Touchante |

| 1978 | Funkadelic | One Nation Under A Groove | P.E. Squad/Doodoo Chasers ("going All The Way Off") |
|------|-----------|---------------------------|---------------------------------------------------|
| 1978 | Parlet | Pleasure Principle | Pleasure Principle |
| 1978 | Parlet | Pleasure Principle | Misunderstanding |
| 1978 | Parliament | Motor-Booty Affair | Liquid sunshine |
| 1978 | Funkadelic | One Nation Under A Groove | Lunchmeataphobia (Think It Ain't Illegal Yet) |
| 1978 | Funkadelic | One Nation Under A Groove | Maggot Brain - Live |
| 1978 | Parliament | Motor-Booty Affair | Mr.Wiggles |
| 1978 | Brides of Funkenstein | Funk or Walk | Just Like You |
| 1978 | Parliament | Motor-Booty Affair | One of those Funky Thangs |
| 1978 | Parlet | Pleasure Principle | Love Amnesia |
| 1978 | Bernie Worrell | All The Woo In The World | Much Thrust |
| 1978 | Bernie Worrell | All The Woo In The World | Reprise: Much Thrust |
| 1978 | Bernie Worrell | All The Woo In The World | Hold On |
| 1978 | Bootsy | Bootsy? Player Of The Year | Roto-Rooter |
| 1978 | Bootsy | Bootsy? Player Of The Year | As In (I Love You) |
| 1978 | Bootsy | Bootsy? Player Of The Year | May The Force Be With You |
| 1978 | Bootsy | Bootsy? Player Of The Year | Very Yes |
| 1978 | Bootsy | Bootsy? Player Of The Year | Hollywood Squares |
| 1978 | Bootsy | Bootsy? Player Of The Year | Bootzilla |
| 1978 | Parliament | Motor-Booty Affair | Aqua Boogie (A Psychoalphadiscobetabioaquadoloop) |
| 1978 | Parliament | Motor-Booty Affair | Rumpofsteelskin |
| 1978 | Brides of Funkenstein | Funk or Walk | Disco To Go |

| 1978 | Bernie Worrell | All The Woo In The World | Happy To Have (Happiness On Our Side) |
| 1978 | Bernie Worrell | All The Woo In The World | Insurance Man For The Funk |
| 1979 | Funkadelic | Uncle Jam Wants You | Uncle Jam |
| 1979 | Parlet | Invasion of the booty snatchers | Don't Ever Stop (Lovin' Me, Needin' Me) |
| 1979 | Parlet | Invasion of the booty snatchers | Booty Snatchers |
| 1979 | Fred Wesley & The Horny Horns | Say Blow By Blow Backwards | Just Like You |
| 1979 | Funkadelic | Uncle Jam Wants You | Holly Wants To Go To California |
| 1979 | Funkadelic | Uncle Jam Wants You | Foot Soldiers (Star Spangled Funky) |
| 1979 | Funkadelic | Uncle Jam Wants You | (Not Just) Knee Deep |
| 1979 | Parlet | Invasion of the booty snatchers | You're Leaving |
| 1979 | Brides of Funkenstein | Never Buy Texas From A Cowboy | Party Up In Here |
| 1979 | Brides of Funkenstein | Never Buy Texas From A Cowboy | Never Buy Texas From A Cowboy |
| 1979 | Bootsy | This Boot Is Made For Fonk-n | Under The Influence Of A Groove |
| 1979 | Bootsy | This Boot Is Made For Fonk-n | Jam Fan (Hot) |
| 1979 | Bootsy | This Boot Is Made For Fonk-n | Bootsy Get Live |
| 1979 | Brides of Funkenstein | Never Buy Texas From A Cowboy | Smoke Signals |
| 1979 | Brides of Funkenstein | Never Buy Texas From A Cowboy | I'm Holding You Responsible |
| 1979 | Parliament | Gloryhallastoopid (or,Pin the Tail of the Funky) | Pin the Tail on The Funky |
| 1979 | Parlet | Invasion of the booty snatchers | No Rump To Bump |

| 1980 | Philippe Wynne | Wynne Jammin' | Never Gonna Tell It |
|---|---|---|---|
| 1981 | Funkadelic | The Electric Spanking Of War Babies | Electro-Cuties |
| 1981 | Funkadelic | The Electric Spanking Of War Babies | Electric Spanking Of War Babies |
| 1981 | Funkadelic | The Electric Spanking Of War Babies | Oh I |
| 1981 | Funkadelic | The Electric Spanking Of War Babies | Funk Gets Stronger (Part 1) |
| 1981 | Funkadelic | The Electric Spanking Of War Babies | Medley: She Loves You / Funk Gets Stronger (Kml Version) |
| 1981 | Funkadelic | The Electric Spanking Of War Babies | Icka Prick |
| 1983 | P Funk All Stars | Urban Dancefloor Guerillas | Hydraulic Pump |
| 1983 | P Funk All Stars | Urban Dancefloor Guerillas | Catch A Keeper |
| 1983 | P Funk All Stars | Urban Dancefloor Guerillas | One Of Those Summers |
| 1983 | P Funk All Stars | Urban Dancefloor Guerillas | Acupuncture |
| 1985 | George Clinton | Some of My Best Jokes Are Friends | Some of My Best Jokes Are Friends |
| 1985 | George Clinton | Some of My Best Jokes Are Friends | Bullet Proof |
| 1985 | George Clinton | Some of My Best Jokes Are Friends | Bodyguard |
| 1985 | George Clinton | Some of My Best Jokes Are Friends | Pleasures Of Exhaustion (Do It Till I Drop) |
| 1985 | George Clinton | Some of My Best Jokes Are Friends | Double Oh-Oh |

### F. Clinton Seeks to Regain Control Over His Catalog Through Sections 203 and 304(c) of the Copyright Act

62.  Clinton has sought to regain control over his catalog by filing termination notices with the U.S. Copyright Office to terminate the fraudulent grants, transfers, licenses, and assignments that Defendants have garnered over Clinton's catalog.

63.  Clinton relied on 17 U.S.C. §§203 and 304(c) of the Copyright Act of 1976 to effectuate valid and enforceable termination notices upon Defendants.

64.  Under Section 203, an author may terminate any rights that were granted on or after January 1, 1978 within five years beginning at the end of a thirty-five year period from the date of the grant.  Further, 17 U.S.C. §203(b) states that upon the effective date of termination, "all rights under this title that were covered by the terminated grants revert to the author[.]"

65.  Under 17 U.S.C. §304(c)(3), an author may terminate any rights that were granted before January 1, 1978 "at any time during a period of five years beginning at the end of fifty-six years from the date copyright was originally secured, or beginning on January 1, 1978, whichever is later."

66.  Clinton has filed valid and timely termination notices, *see* Exhibits A, B, and C, on Defendants and recorded those notices with the U.S. Copyright Office in accordance with the Copyright Act.

67. Despite the validity and timeliness of these notices, Defendants frequently ignored Clinton's notices or failed to provide objections that would not obviate the validity of Clinton's termination notices under Sections 203 and 304(c).

68. Defendants recognized the notices and timely relinquished the rights to "Atomic Dog." Defendants refuse to relinquish with respect to any of the other songs Clinton authored, which were included in the same notices.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DECLARATORY RELIEF UNDER 17 U.S.C. §203
*Against all Defendants*

69. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

70. Copyright termination rights are available under 17 U.S.C. §203.

71. Section 203 allows authors to terminate "the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author on or after January 1, 1978[.]"

72. Under 17 U.S.C. §203, Plaintiff could terminate any rights that were granted on or after January 1, 1978 within five years beginning at the end of a thirty-five year period from the date of the grant.

73. This termination right is available for any work not considered a work made for hire. As defined in 17 U.S.C. §101, a "work made for hire" is (1) "a work prepared

by an employee within the scope of his or her employment" or (2) "a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."  For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

74.  Further, under 17 U.S.C. §203(b), "[u]pon the effective date of termination, all rights under this title that were covered by the terminated grants revert to the author[.]"

75.  Plaintiff is entitled to copyright termination rights.

76.  Plaintiff is not and has never been an employee of any of the Defendants.

77.  Plaintiff never entered into any employment agreement with any of the Defendants nor has Plaintiff received any employment benefits typically conferred upon employees.

78.   Plaintiff never signed a work for hire agreement with any of the Defendants, nor did he sign any employment agreements with any of them.

79.   Plaintiff created, recorded, and published his catalog through his own companies and through Defendants deception and willful acts lost rights to his own musical works.

80.   Plaintiff filed timely, valid, and enforceable termination notices under Section 203 of the copyright acts that would revert the rights back to Plaintiff when the termination dates become due. *See* Exhibit A.

81.   Yet, Defendants continue to ignore Clinton's statutory rights, and continue to exploit his catalog, steal his royalty, and refuse their legal obligations to surrender his rights in his work.

82.    Plaintiff seeks to have this Court enter a declaratory judgement that Plaintiff's termination notices are valid and that the copyrights automatically revert to Plaintiff on the corresponding termination date of each copyright work.

## SECOND CAUSE OF ACTION
## DECLARATORY RELIEF UNDER 17 U.S.C. §304
### *Against all Defendants*

83.   Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

84.   Under 17 U.S.C. §304(c)(3), an author may terminate any rights that were granted before January 1, 1978 "at any time during a period of five years beginning at the

end of fifty-six years from the date copyright was originally secured, or beginning on January 1, 1978, whichever is later."

85. Plaintiff's termination notices are valid and enforceable.

86. Plaintiff's timely and valid termination notices were served and recorded with the U.S. Copyright Office as required by the Copyright Act. *See* Exhibit B.

87. Plaintiff timely filed and served notice to Defendants to terminate the fraudulent grants, transfers, licenses, and assignments that Defendants have garnered over Plaintiff's catalog.

88. Defendants chose to ignore or failed to properly respond to Plaintiff's timely and valid termination notices.

89. Plaintiff seeks to have this Court enter a declaratory judgement that Plaintiff's termination notices are valid and that the copyrights automatically revert to Plaintiff on the corresponding termination date of each copyright work.

**THIRD CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT CLAIMS**
*Against all Defendants*

90. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

91. Under 17 U.S.C. §501, infringement of copyright occurs when someone "violates any of the exclusive rights of the copyright owner."

92.  Pursuant to 17 U.S.C. §106, copyright owners have the exclusive rights to reproduce, prepare derivative works based upon, distribute copies of, and publicly perform their copyrighted works.

93.  Defendants have intentionally precluded Plaintiff from enjoying any of his exclusive rights.

94.  As of each effective termination date included in Plaintiff's timely and valid termination notices, the copyright in each noticed work automatically returns to Plaintiff.

95.  As of the effective termination dates for each song included in Exhibit C, rights to each single noticed by Plaintiff would automatically revert back to Plaintiff.

96.  Despite the valid and automatic reversion of copyrights to Plaintiff, Defendants continue to claim ownership of singles noticed by Plaintiff well beyond the effective termination dates referenced in each notice.

97.  By purposefully exercising control of Plaintiff's §106 exclusive rights, Defendants are knowingly and willfully committing copyright infringement.

98.  As additional effective termination dates come to pass, Plaintiff's claims for copyright infringement only expand.

99.  As a result, Plaintiff seeks actual damages, or in the alternative statutory damages for willful copyright infringement.

## FOURTH CAUSE OF ACTION
## <u>CONVERSION</u>
### *Against All Defendants*

100. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

101. Plaintiff brings this claim for conversion against each and every Defendant based on Defendants' wrongful deprivation of royalty payments owed to Clinton for the use of his music.

102. Defendants, through the fabrication of agreements, granted themselves rights to Plaintiff's intellectual properties and began collecting royalties, and continue to do so to this day, including but not limited to, publisher and mechanical royalties and licensing fees that were and are duly owed to Plaintiff.

103. Defendants publicly held themselves out as Plaintiff's publishers and agents having certain rights to Plaintiff's intellectual properties, executing contracts with entertainment companies and other third parties without Plaintiff's knowledge or approval.

104. Defendants lacked any actual or implied authority, granted by Plaintiff or otherwise, to collect and keep royalties, licensing fees, and other monies that are rightfully owed to Plaintiff.

105. Defendants, from as early as the 1980s, began collecting monies and royalties for Plaintiff's intellectual property that are rightfully owned by Plaintiff.

106. To this day, Defendants still collect and deprive Plaintiff of royalties, monies and other fees that are rightfully owed to Plaintiff for intellectual property works created by Plaintiff.

107. Defendants seized and converted millions of dollars in royalties, licensing fees, and other monies that were and are immediately owed to Plaintiff for his intellectual property works.

108. As a direct and proximate result of Defendants' seizure and conversion of millions of dollars owed to Plaintiff, Plaintiff has suffered and continues to suffer loss in the form of lost profits, royalties, licensing fees, and other monies rightfully owed to him and seeks damages, interest, costs, and all other relief the Court deems just and proper.

109. Further, due to Defendants' seizure and conversion of Plaintiff's royalties, licensing fees, and other monies with complete disregard to Plaintiff's rights, Plaintiff seeks punitive damages available under Florida law.

**FIFTH OF CAUSE OF ACTION**
**<u>CIVIL THEFT</u>**
***Against All Defendants***

110. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

111. Plaintiff asserts this claim for civil theft pursuant to Fla. Stat. § 772.11 against all Defendants based upon their knowledge and intent to permanently deprive Clinton of his royalty payments rightfully owned by Clinton for his catalog.

112. Defendants, through the fabrication of agreements and other licenses, granted itself rights to Plaintiff's intellectual properties and began collecting royalties, including but not limited to, publisher and mechanical royalties and licensing fees that were and are duly owed to Plaintiff.

113. Defendants publicly held themselves out as Plaintiff's publishers and agents having certain rights to Plaintiff's intellectual properties, signing deals and agreements with music producers and third parties without Plaintiff's knowledge or approval.

114. Defendants lacked any actual authority, granted by Plaintiff or otherwise, to collect and keep royalties, licensing fees, and other monies that are rightfully owed to Plaintiff.

115. Defendants knowingly and with the intent to permanently deprive Plaintiff of royalties and monies that are rightfully his, engaged in the unauthorized use of his music and intellectual property to gain royalties, monies, and other fees and capitalized on this unauthorized use.

116. Defendants, starting as early as 1980, began stealing these monies and royalties relating to Plaintiff's intellectual property works that are rightfully owned by Plaintiff.

117. Defendants, to this day, are still stealing and depriving Plaintiff royalties, monies and other fees that are rightfully owed to Plaintiff for intellectual property work created by Plaintiff.

118. Defendants seized and converted, with the intent to permanently deprive millions of dollars in royalties, licensing fees, and other monies that were and are immediately owed to Plaintiff for his intellectual property work.

119. As a direct and proximate cause of Defendants' improper collection and theft of Plaintiff's publishing and mechanical royalties, licensing fees, and other monies immediately owned by and owed to the Plaintiff, Plaintiff has suffered damages in the form of lost profits, publishing and mechanical royalties, licensing fees, and other monies rightfully owed to Plaintiff and seeks treble damages, interest, reasonable attorney's fees, and costs, and all other relief the Court deems just and proper pursuant to Fla. Stat. § 772.11.

**SIXTH CAUSE OF ACTION**
**<u>FRAUD</u>**
*Against All Defendants*

120. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

121. Defendants knowingly and intentionally lied and misrepresented to Plaintiff, and continue to lie and misrepresent, the amount and nature of the agreements that Defendants have entered into on behalf of Plaintiff and the amount of royalties and monies they are collecting on his behalf with the intent to hide and conceal from Plaintiff millions of dollars in revenue that Plaintiff is rightfully owed.

122. Defendants intentionally lied, misrepresented, and deceived Plaintiff through acts and omissions related to managing and handling of Plaintiff's catalog, including but not limited to, royalties, other monies, and profits from agreements that Defendants continue to enter into on behalf of Plaintiff absent Plaintiff's knowledge or authority.

123. To this day, Defendants through deceptive practices and acts and omissions, still engage in unauthorized agreements and still collect and deprive Plaintiff of royalties, licensing fees, monies, and other fees that are rightfully owed to Plaintiff for intellectual property work created by Plaintiff.

124. Defendants' misrepresentation and deceit spans decades, where Defendants, through willful acts and omissions, created and still create schemes relating to Plaintiff's rightful ownership of his intellectual property work, royalties, and other monies and fees.

125. Defendants have frequently lied and omitted—and continue to lie and omit— the nature and number of agreements they have entered into on behalf of Plaintiff, accurate accounting of profits, and royalties and monies collected on behalf of Plaintiff for Plaintiff's intellectual property works.

126. Plaintiff reasonably relied to his detriment on the integrity of Defendants and their misrepresentations that they were managing and administering his intellectual property to his detriment.

127. To this day, Plaintiff is still uncovering new misrepresentations and omissions that Defendants continue to carry out regarding Plaintiff's intellectual property.

128. As a direct and proximate result of Defendants participation in conspiracies, schemes, fraud, deceit and tortuous failure to disclose, Plaintiff suffered and continues to suffer injuries and damages in excess of millions of dollars due to Defendants' misrepresentations, for which Defendants are liable.

129. Plaintiff seeks all damages, interest, costs, and all other relief the Court deems just and proper.

### SEVENTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD
### Against All Defendants

130. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

131. Defendants knowingly and intentionally lied and misrepresented to Plaintiff, and continue to do so, the nature of all agreements that Defendants have entered on behalf of Plaintiff and the amount of royalties and monies Defendants are collecting on Plaintiff's behalf with the intent to hide and conceal from Plaintiff millions of dollars in revenue that Plaintiff is rightfully owed.

132. Over the decades, Defendant Boladian acted as Plaintiff's publisher, and administrator and continue to hold himself as a person authorized to sign deals and agreements, and collect royalties and monies on behalf of Plaintiff, absent Plaintiff's knowledge and without any express or implied authority; this allowed Boladian unfettered access to Plaintiff's intellectual property and facilitated all kinds of

unauthorized licensing, sale, and sampling agreements that Plaintiff has or is yet to uncover.

133. Defendant Boladian, as Plaintiff's agent, intentionally lied, misrepresented, and deceived Plaintiff through acts and omissions related to managing and handling of Plaintiff's intellectual property rights, and other property rights, including but not limited to, royalties and other monies rightfully owned by Plaintiff, and the agreements that Boladian continue to enter into on behalf of Plaintiff absent Plaintiff's knowledge or authority.

134. To this day, Defendants through deceptive practices and acts and omissions, continue to engage in unauthorized agreements and continue to collect and deprive Plaintiff of royalties, licensing fees, monies, and other fees that are rightfully owed to Plaintiff for intellectual property works created by Plaintiff.

135. Defendants' misrepresentation and deceit spans decades, where Defendants, through willful acts and omissions, created and still create schemes relating to Plaintiff's rightful ownership of his intellectual property work, royalties, and other monies and fees.

136. Defendants have frequently lied and omitted and continue to lie and omit the nature and number of agreements they have entered on behalf of Plaintiff, accurate accounting of profits, royalties and monies collected on behalf of Plaintiff for Plaintiff's intellectual property work.

137. Plaintiff reasonably relied to his detriment on the integrity of Defendants and their misrepresentations that they were managing his intellectual property to his detriment

138. To this day, Plaintiff is still uncovering new misrepresentations and omissions that Defendants continue to carry out regarding Plaintiff's intellectual property.

139. As a direct and proximate result of Defendants' participation in schemes, fraud, deception, and tortuous failure to disclose, Plaintiff suffered and is still suffering injuries and millions of dollars in damages due to Defendants' misrepresentations, for which Defendants are liable.  Plaintiff seeks all damages, interests, costs, and all other relief the Court deems just and proper.

### EIGTH CAUSE OF ACTION
### <u>UNJUST ENRICHMENT</u>
### Against All Defendants

140. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

141. Through fraud or prior dealings, Defendants presented themselves and acted as publishers of Plaintiff's catalog.

142. By representing themselves as Clinton's publishers, Defendants accessed, received, and continue to receive publisher royalties from record labels and other third parties.

143. Further, by representing themselves to record labels and other third parties as Clinton's agents and publishers, they were able to enter into licensing agreements, sales

agreements, and sampling agreements on Plaintiff's behalf without his prior knowledge or consent and began collecting publisher royalties and other royalties without any right or authority.

144. Plaintiff was and is entitled to his portion of the publisher's royalties in the form of writer's credit, mechanical royalties, and other monies that are duly owed to him for his own creative catalog and compositions.

145. Further, Plaintiff is also entitled to receive publisher royalties and other royalties, monies, and fees that Defendants are fraudulently collecting without any right or authority.

146. Plaintiff to this day has not received any royalty payments that Defendants were obligated to distribute to Plaintiff, or royalties, and other monies and, fees that Defendants had no right or authority to collect on his behalf which are rightfully owned by him for the catalog that he has created.

147. Plaintiff conferred substantial benefits upon Defendants, either willingly or unwillingly, for which Defendants have received and continue to receive millions of dollars in revenues through fraud, deceit, and other illegalities.

148. Plaintiff has suffered and continues to suffer substantial loss from royalty payments and other payments that are rightfully owed to him due to Defendants unlawful acts.

149. In light of Defendants' extensive conspiracy to deceive and defraud Plaintiff, it would be completely inequitable to allow Defendants to retain the benefits of Plaintiff's artistic talents and work without adequately compensating Plaintiff—justice demands otherwise.

150. As a direct and proximate cause of Defendants' improper retention of Plaintiff's benefits stemming from an extensive conspiracy to deceive and defraud, Plaintiff has suffered damages in the form of lost benefits, revenues, profits, compensation, royalty payments and other monies rightfully owned by, and owed to Plaintiff. Plaintiff seeks restitution to recover such damages, interest, costs, and all other relief the Court deems just and proper of which Defendants have improperly retained and the Plaintiff has lost.

151. Accordingly, Plaintiff seeks monetary equitable relief in the amount of (a) any added value to the Defendants' businesses, and (b) any additional income received personally by the individual Defendants, but only to the extent that (a) and (b) are attributable to third-party knowledge of the Defendants' history, experience, and/or reputation of working with the Plaintiff. Plaintiff also seeks to recover interest on the same costs and all other relief the Court deems just and proper.

## NINTH CAUSE OF ACTION
## <u>BREACH OF FIDUCIARY DUTY</u>
### Against All Defendants

152. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

153. Defendants, through prior dealings with Plaintiff and through direct appointment by the Plaintiff, were agents of the Plaintiff.

154. Boladian over the past few decades acted as Plaintiff's publisher, and administrator and continue to hold himself as a person authorized to sign deals and agreements, and collect royalties and monies on behalf of Plaintiff, absent Plaintiff's knowledge and without any express or implied authority; this allowed Boladian unfettered access to Plaintiff's intellectual property and facilitated a host of unauthorized licensing, sale, and sampling agreements that Plaintiff has or is yet to uncover.

155. Boladian was and continues to be the sole decision maker of all Defendant Business Entities. Boladian, as an agent and corporate representative for all Defendant Business Entities, was acting as a fiduciary on behalf of himself and as a representative of Defendant Business Entities.

156. Defendants through customary industry practice, their fraudulent dealings and agreements with Plaintiff and other third parties, and as part of their duties continue to act as agents of Plaintiff and as such, were and still are required to collect royalties, fees,

and monies, to provide accounting of such royalties, and to distribute Plaintiff's shares of said royalties and monies to Plaintiff.

157. Defendants, while acting as agents of Plaintiff were and are required to provide accurate accounting and to pay Plaintiff royalties, monies, and fees as part of their duties.

158. Defendants have consistently failed to fulfill their fiduciary duties to Plaintiff and consistently withheld millions of dollars in royalties, monies, and fees that are rightfully owned by Plaintiff. Defendants breached their fiduciary duties to Plaintiff by withholding millions of dollars that are rightfully owed to Plaintiff.

159. Defendants continue to breach their fiduciary duties to Plaintiff by continuing to withhold accounting, royalties, and monies owed to Plaintiff.

160. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages in the form of lost profits, publishing and mechanical royalties, fees, and other monies rightfully owned by and owed to Plaintiff. Plaintiff seeks restitution to recover profits and benefits gained by Defendant as a result of Plaintiff's loss, and all other damages, interest, costs, and other relief the Court deems just and proper. Further, due to Defendants' purposeful withholding of millions of dollars from Plaintiff done with disregard to Plaintiff's rights, Plaintiff seeks punitive damages available under Florida law.

## TENTH CAUSE OF ACTION
### NEGLIGENCE
#### *Against All Defendants*

161. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

162. Defendants as publishers of Plaintiff's intellectual property work have a duty to carry on publishers' duties that are required by them through customary industry practice, agreements, and prior practices between Plaintiff and Defendants.

163. As publishers for Plaintiff, Defendants are required to distribute mechanical/publisher royalties, provide accurate accounting, and (other duties) to Plaintiff.

164. Defendants have breached their duty as agents by intentionally and consistently withholding royalties, monies, accounting (and other duties) that are owed to Plaintiff which amount to millions of dollars in revenue.

165. As a result of Defendants continuous breach, Plaintiff suffered and continues to suffer damages in the form of millions of dollars in loss of revenue. Plaintiff seeks to recover damages, interest, costs, and all other relief the Court deems just and proper. Further, due to Defendants' intentional, continuous, and consistent withholding of royalties, monies, accounting (and other duties) that are owed to Plaintiff, Plaintiff seeks punitive damages pursuant to Fla. Stat. § 768.73.

## ELEVENTH CAUSE OF ACTION
## <u>PRELIMINARY INJUNCTION</u>
### *Against All Defendants*

166. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

167. Plaintiff has pled significant, consequential, and sufficient facts set forth in this Complaint, which support a substantial likelihood of success on the merits.

168. Plaintiff suffered and continues to suffer substantial harm as Defendants continue their systemic, abusive, and fraudulent practice to steal and divert assets that are rightfully owed to Plaintiff—irreparably harming Plaintiff.

169. Further, based on Defendants' actions, specifically Boladian. Plaintiff has reason to believe that Boladian is soliciting the sale of assets including the rights and ownership interests in Plaintiff catalog—irreparably harm Plaintiff.

170. Plaintiff's significant and devastating injuries that occurred and will continue to occur, outweighs any possible harm that Defendants might accrue by the entry of a temporary injunction limiting any asset transfer, sale, or otherwise.

171. The entry of a temporary injunction and/or preliminary injunction will not conflict with the public interests.

172. Accordingly, Plaintiff seeks a preliminary injunction against all Defendants to prevent further harm to Plaintiff.

## TWELFTH CAUSE OF ACTION
## ACCOUNTING
### *Against All Defendants*

173. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

174. Over the decades, Defendants acted as Plaintiff's publishers and administrators and continue to hold themselves as entities authorized to sign deals and agreements, and collect royalties and monies on behalf of Plaintiff, absent Plaintiff's knowledge and without any express or implied authority; which allowed Defendants unfettered access to Plaintiff's intellectual property and facilitated a host of unauthorized licensing, sale, and sampling agreements that Plaintiff has or is yet to uncover.

175. Boladian was and continues to be the sole decision maker for all Defendant Business Entities; Boladian as an agent and corporate representative of all Defendant Business Entities was acting as a fiduciary on behalf of himself and as a representative of Defendant Business Entities.

176. Defendants over the past few decades have and continue to act and represent themselves to third parties as Plaintiff's agents.

177. Nonetheless, Plaintiff has yet to receive an accounting, royalty payments, monies, and other fees that are rightfully owed to him.

178. Accordingly, Plaintiff seeks an accounting of all publishing royalties that Defendants received for or in connection to all of Clinton's creative catalog and an

accounting of all monies, fees, and profits in relation to assignment, licensing, sale, and sampling agreements that Defendants have executed on behalf of Plaintiff, with or without his knowledge or consent, within the United States of America or around the globe.

## THIRTEENTH CAUSE OF ACTION
## CONSTRUCTIVE TRUST
### *Against All Defendants*

179. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

180. Defendants through deceptive practices and acts and omissions, have and continue to engage in unauthorized agreements and collect and deprive Plaintiff of royalties, licensing fees, monies, and other fees that are rightfully owed to Plaintiff for intellectual property works created by Plaintiff.

181. Plaintiff has yet to receive an accounting, royalty payments, monies, and other fees that are rightfully owed to him.

182. Defendants, who have withheld an accounting, royalty payments, monies, and other fees that are rightfully owed to Plaintiff, must provide an accounting of and earnings related to all publishing royalties received in connection to Plaintiff's creative catalog, otherwise Defendants will continue to be unjustly enriched.

183. Accordingly, Plaintiff seeks an accounting of and earnings related to all publishing royalties that Defendants received for or in connection to all of Plaintiff's

creative catalog, an accounting of all monies, fees, and profits in relation to assignment, licensing, sale, and sampling agreements that Defendants have executed on behalf of Plaintiff, with or without his knowledge or consent, within the United States of America or around the globe.

184. Plaintiff further requests that the Court places Defendants' bank accounts and other assets in constructive trust until such time as said accounting is complete and Plaintiff is made whole for Defendants' wrongful misappropriation of all monies, fees, and profits in relation to assignment, licensing, sale, and sampling agreements derived from Plaintiff's creative catalog.

## FOURTEENTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT
### Against All Defendants

185. Plaintiff realleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

186. Defendants knowingly and intentionally lied and misrepresented and continue to lie and misrepresent to Plaintiff the nature of agreements defendants entered into on Plaintiff's behalf and the amount of royalties and monies they are collecting on his behalf with the intent to hide and conceal from Plaintiff.

187. Defendants had a duty to disclose these dealings but never placed Plaintiff on notice of any dealings or provided any of the promised accounting, mechanical royalty, writer's credit, songwriter's royalties, or any other royalties due to Plaintiff and knew

concealing this information would induce Plaintiff to reasonably rely on their misrepresentations.

188. Plaintiff reasonably relied to his detriment on the integrity of Defendants and their misrepresentations that they were managing his intellectual property to his detriment.

189. Plaintiff was and is entitled to his portion of the publisher's royalties in the form of writer's credit, mechanical royalties, and other monies that are duly owed to him for his own creative catalog and compositions.

190. To this day, Defendants through deceptive practices and acts and omissions, still engage in unauthorized agreements and still collect and deprive Plaintiff of royalties, licensing fees, monies, and other fees that are rightfully owed to Plaintiff for intellectual property work created by Plaintiff.

191. Plaintiff has yet to receive an accounting, royalty payments, monies, and other fees that are rightfully owed to him.

192. Accordingly, Plaintiff seeks an accounting of and earnings related to all publishing royalties that Defendants received for or in connection to all of Plaintiff's creative catalog, an accounting of all monies, fees, and profits in relation to assignment, licensing, sale, and sampling agreements that Defendants have executed on behalf of Plaintiff, with or without his knowledge or consent, within the United States of America or around the globe.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court enter judgment against Defendants, jointly and severally:

A.    Compensatory and consequential damages in an amount to be determined by a jury in excess of the Court's jurisdictional amount;

B.    Restitution in an amount to be determined by a jury for all damages gained by Defendant as a result of their intentional, actual, and malicious conduct that equated to losses by Plaintiff;

C.    Punitive damages in an amount to be determined by a jury, for the intentional, actual, and malicious conduct of Defendants in their individual capacities;

D.    Attorneys' fees and the costs of this action and other costs that may be associated with this action;

E.    All statutory damages including but not limited to those prescribed under Fla. Stat. § 772.11;

F.    Declaratory judgment that Plaintiff's termination notices are effective; and

G.    Any and all other relief that this Court deems equitable, just, and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury of all claims triable within this matter.

Respectfully submitted,

DATED: March 11, 2025

/s/ Eli J. Hare
_____
Eli J. Hare

Ben Crump                          Diandra "Fu" Debrosse*
Chris O'Neal*                      Eli Hare
**BEN CRUMP LAW, PLLC**            **DiCELLO LEVITT LLP**
122 South Calhoun Street           505 20th Street North
Tallahassee, Florida 32301         Suite 1500
Tel. 800.715.5999                  Birmingham, Alabama 35203
ben@bencrump.com                   Tel. 205.855.5700
chris@bencrump.com                 fu@dicellolevitt.com
                                   ehare@dicellolevitt.com

                                   Éviealle Dawkins*
                                   **DiCELLO LEVITT LLP**
                                   801 17th Street, NW
                                   Suite 430
                                   Washington, D.C. 20006
                                   Tel. 202.975.2288
                                   edawkins@dicellolevitt.com

                                   ***Counsel for Plaintiff***

                                   *Motion for *pro hac vice* admission to be filed.