# EXHIBIT 4

WRITERS AGREEMENT

THIS AGREEMENT, made this _2_ day of _December_ 1983, by and between _GEORGE CLINTON_, hereinafter referred to as "Writer" and BRIDGEPORT MUSIC, INC., hereinafter referred to as "Publisher"

W I T N E S S E T H:

In consideration of the mutual covenants and undertakings herein set forth, the parties do hereby agree as follows:

1. Publisher hereby engages Writer to render his services as a songwriter and composer and otherwise as may be hereinafter set forth. Writer hereby accepts such engagement and agrees to render such services exclusively for Publisher during the term hereof, upon the terms and conditions set forth herein.

2. The term of this Agreement shall commence with the date hereof and shall continue in force for a period of five (5) years from said date. Writer hereby grants to Publisher a series of two (2) separate, consecutive and irrevocable options of one (1) year, each beginning at the expiration of the original term hereof, upon all of the same terms and conditions as are applicable to the original term. Each option shall be deemed to be exercised by Publisher unless it shall give Writer written notice to the contrary at least thirty (30) days prior to the expiration of the then current term. Whenever the expressions "the term of this Agreement" or "period hereof" or words of similar connotation are included herein, they shall be deemed to mean and refer to the original period of this Agreement and the periods of all renewals extensions, substitutions or replacements of this Agreement, whether expressly indicated or otherwise.

3. (a) Writer herby irrevocably and absolutely assigns, transfer, sets over and grants to Publisher, its successors and assigns each and every and all rights and interests of every kind, nature and description in and to the results and proceeds of Writer's services hereunder, including but not limited to the titles, words and music of any and all original musical compositions in the public domain in any and all forms, and all rights and interests existing under all agreements and licenses relating thereto, together with all world-wide copyrights and extensions thereof, which musical works have been written, composed, created or conceived, in whole or in part, by Writer.

alone or in collaboration with another or others, and which may hereafter, during the term hereof, be written, composed, created or conceived by Writer, in whole or in part, alone or in collaboration with another or others, and which are now owned or controlled and which may, during the term hereof, be acquired owned or controlled, directly or indirectly, by Writer, alone or with others, or as the employer or transferee, directly or indirectly, of the writers or composers thereof, including the title, words and music of each such composition, and all world-wide copyrights and renewals and extensions thereof, all of which Writer does hereby represent are and shall at all times be Publisher's sole and exclusive property as the sole owner thereof, free from any adverse claims or rights therein by any other person, firm or corporation.

    (b) Writer acknowledges that, included within the rights and interests hereinabove referred to, but without limiting the generality of the foregoing, is Writer's irrevocable grant to Publisher, its successors, licensees, sublicensees and assigns, of the sole and exclusive right, license, privilege and authority throughout the entire world with respect to the said original musical compositions and original arrangements of compositions in the public domain, whether now in existence or hereafter created during the term hereof, as follows:

    (i) To perform said musical compositions publicly for profit by means of public and private performance, radio broadcasting, television, or any and all other means, whether now known or which may hereafter come into existence.

    (ii) To substitute a new title or titles for said compositions and to make any arrangement, adaptation, translation, dramatization and transposition of said compositions, in whole or in part, and in connection with any other musical, literary or dramatic material as Publisher may deem expedient or desirable.

    (iii) To secure copyright registration and protection of said compositions in Publisher's name or otherwise as Publisher may desire at Publisher's own cost and expense and at Publisher's election, including any and all renewals and extensions of copyrights, and to have and to hold said copyrights, renewals, extensions and all rights of whatsoever nature thereunder existing, for and during the full term of all said copyrights and all renewals and extensions thereof.

      (iv) To make or cause to be made, master records, transcriptions, sound tracks, pressings, and any other mechanical, electrical or other reproductions of said compositions, in whole or in part, in such form or manner and as frequently as Publisher's sole and uncontrolled discretion shall determine, including the right to synchronize the same with sound motion pictures and the right to manufacture, advertise, license or sell such reproductions for any and all purposes, including but not limited to private performances and public performances, by broadcasting, television, sound motion pictures, wired radio and any and all other means or devices whether now known or which may hereafter come into existence.

      (v) To print, publish and sell sheet music, orchestrations, arrangements and other editions of the said compositions in all forms, including the right to include any or all of said compositions in song folios or lyric magazines with or without music, and the right to license others to include any or all of said compositions in song folios or lyric magazines with or without music.

      (vi) Any and all other rights of every and any nature now or hereafter existing under and by virtue of any common law rights and any copyrights and renewals and extensions thereof in any and all of such compositions.

      (c) Writer grants to Publisher, without any compensation other than as specified herein, the perpetual right to use and publish and to permit others to use and publish Writer's name (including any professional name heretofore or hereafter adopted by Writer), likeness, voice and sound effects and biographical material, or any reproduction or simulation thereof and titles of all compositions hereunder in connection with the printing, sale, advertising, distribution and exploitation of music, folios, recordings, performances, player rolls and otherwise concerning any of the compositions hereunder, and for any other purpose related to the compositions hereunder, and for any other purpose related to the business of Publisher, its affiliated and related companies, or to refrain therefrom. This right shall be exclusive during the term hereof and nonexclusive thereafter. Writer will not authorize or permit the use of his name, likeness, biographical material concerning Writer, or other identification of Writer, or any reproduction or simulation thereof, for or in connection with any musical composition or works, in any manner or for any purpose, other than by

- 3 -

or for Publisher. Writer further grants to Publisher the right to refer to Writer as a "Publisher Exclusive Songwriter and Composer" or other similar appropriate appellation.

4. From the date hereof and during the term of this Agreement, Writer will not write or compose, or furnish or dispose of, any musical compositions, titles, lyrics or music, or any rights or interests therein whatsoever, nor participate in any manner with regard to the same for any person, firm or corporation other than Publisher, nor permit the use of his name or likeness as the writer or co-writer of any musical composition by any person, firm or corporation other than Publisher.

5. Writer hereby warrants and represents to Publisher that:

   (a) Writer has the full right, power and authority to enter into and perform this Agreement and to grant to and vest in Publisher all the rights herein set forth, free and clear of any and all claims, rights and obligations whatsoever;

   (b) All the results and proceeds of the services of Writer hereunder, including all of the titles, lyrics, music and musical compositions, and each and every part thereof, delivered and to be delivered by Writer hereunder are and shall be new and original and capable of copyright protection throughout the entire world;

   (c) No part thereof shall be an imitation or copy of, or shall infringe any other original material; and

   (d) Writer has not and will not sell, assign, lease, license or in any other way dispose of or encumber the rights herein granted to Publisher.

6. Writer does hereby irrevocably constitute, authorize, empower and appoint Publisher, or any of its officers, Writer's true and lawful attorney (with full power of substitution and delegation) in Writer's name, and in Writer's place and stead, or in Publisher's name, to take and do such action, and to make, sign, execute, acknowledge and deliver any and all instruments or documents which Publisher, from time to time, may deem desirable or necessary to vest in Publisher, its successors, assigns and licensees, any of the rights or interests granted by Writer hereunder, including but not limited to such documents required to secure to Publisher the renewals and extensions of copyrights throughout the world of musical compositions written or composed by Writer and owned by Publisher, and also such documents necessary to assign to Publisher, its successors and assigns, such renewal copyrights, and all rights therein for the terms of such renewals and extensions for the use and benefit of Publisher, its successors and assigns.

- 4 -

7. Provided that Writer shall faithfully and completely perform the terms, covenants and conditions of this Agreement, Publisher hereby agrees to pay Writer for the services to be rendered by Writer under this Agreement and for the rights acquired and to be acquired hereunder, the following compensation based on the musical compositions which are the subject hereof:

(a) Five (5¢) cents per copy for each and every regular piano copy and for each and every dance orchestration sold by Publisher and paid for, after deduction of each and every return, in the United States.

(b) Ten (10%) percent of the retail selling price upon each and every printed copy of each and every other arrangement and edition thereof printed, published and sold by Publisher and paid for, after deduction of each and every return, in the United States, except that in the event that such compensation shall be used or caused to be used, in whole or in part, in conjunction with one or more other musical compositions in a folio or album, Writer shall be entitled to receive that proportion of said ten (10%) percent which the subject musical composition shall bear to the total number of musical compositions contained in such folio or album.

(c) Fifty (50%) percent of any and all net sums actually received (less any costs for collection) by Publisher from mechanical rights, electrical transcription and reproducing rights, motion picture synchronization and television rights and all other rights (excepting public performing rights) therein, including the use thereof in song lyric folios, magazines or any other editions whatsoever sold by licensees of Publisher in the United States.

(d) Writer shall receive his public performance royalties throughout the world directly from his own affiliated performing rights society and shall have no claim whatsoever against Publisher for any royalties received by Publisher from any performing rights society which makes payment directly (or indirectly other than through Publisher) to writers, authors and composers.

(e) Fifty (50%) percent of any and all net sums, after deduction of foreign taxes, actually received (less any costs for collection) by Publisher from sales and uses directly related to subject musical compositions in countries outside of the United States [other than public performance royalties as hereinabove mentioned in Paragraph 7(d)].

(f) Publisher shall not be required to pay any royalties on professional or complimentary copies of any

- 5 -

copies or mechanical derivatives which are distributed gratuitously to performing artists, orchestra leaders, disc jockeys or for advertising or exploitation purposes. Furthermore, no royalties shall be payable to Writer on consigned copies unless paid for, and not until such time as an accounting therefor can properly be made.

(g) Royalties as specified hereinabove shall be payable solely to Writer in instances where Writer is the sole author of the entire composition, including the words and music thereof. If this Agreement with Publisher is made and executed by more than one person in the capacity of Writer, the royalties as hereinabove specified shall be payable solely to the particular Writer or Writers who are the authors of the entire composition, including the words and music thereof, and such royalties shall be divided equally among the particular Writers of such composition unless another division is agreed upon in writing between the Writers. However, in the event that one or more other songwriters are authors along with Writer on any composition, then the foregoing royalties shall be divided equally between Writer and the other songwriters of such composition unless another division of royalties is agreed upon in writing between the parties concerned.

(h) Except as herein expressly provided, no other royalties or moneys shall be paid to Writer.

8. Publisher will compute the royalties earned by Writer pursuant to this Agreement within ninety (90) days after the first day of January and the first day of July of each year for the preceding six (6) month period, and will remit to Writer the net amount of such royalties, if any, after deducting any and all recouped advances and chargeable costs under this Agreement, together with the detailed royalty statement, within such ninety (90) days. All royalty statements rendered by Publisher to Writer shall be binding upon Writer and not subject to any objection by Writer for any reason unless specific objection is made, in writing, stating the basis thereof, to Publisher within one (1) year from the date rendered. Writer shall have the right, upon the giving of at least thirty (30) days written notice to Publisher, to have a Certified Public Accountant inspect the books and records of Publisher, insofar as the same concerns Writer, at the expense of Writer, at reasonable times during normal buiness hours, for the purpose of verifying the accuracy of any royalty statement rendered to Writer hereunder.

9. Whenever Writer shall collaborate with any other person in the creation of any musical composition, any such musical composition shall be subject to the terms and conditions of this Agreement and Writer warrants and represents

that prior to the collaboration with any other person, such other person shall be advised of this exclusive agreement and that all such compositions must be published by Publisher. In the event of such collaboration with any other person, Writer shall notify Publisher of the extent that such other person may have in any such musical composition and Writer shall cause such other person to execute a separate songwriter's agreement with respect thereto, which agreement shall set forth the division of the songwriter's share of income between Writer and such other person, and Publisher shall make payment accordingly. If Publisher so desires, Publisher may request Writer to execute a separate agreement in Publisher's customary form with respect to each musical composition hereunder. Upon such request, Writer will promptly execute such agreement. Publisher shall have the right, pursuant to the terms and conditions hereof, to execute such agreement in behalf of Writer hereunder. Such agreement shall supplement and not supersede this Agreement. In the event of any conflict between the provisions of such agreement and this Agreement, the provisions of this Agreement shall govern. The failure of either of the parties hereunder, including but not limited to the rights of Publisher to all of the musical compositions written and composed by Writer.

10. Writer will deliver a manuscript copy of each musical composition hereunder immediately upon the completion or acquisition of such musical composition. Publisher shall advance reasonable costs for the production of demonstration records provided that Publisher shall have approved in writing such costs in advance, and one-half (1/2) such costs shall be deemed additional nonreturnable advances to Writer and shall be deducted from royalties payable to Writer by Publisher under this Agreement. All recordings and reproductions made at demonstration recording sessions hereunder shall become the sole and exclusive property of Publisher, free of any claims whatsoever by Wrtier or any person deriving any rights from Writer.

11. Writer acknowledges that the services rendered hereunder are of a special, unique, unusual, extraordinary and intellectual character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law, and that a breach by Wrtier of any of the provisions of this Agreement will cause Publisher great and irreparable injury and damage. Writer expressly agrees that Publisher shall be entitled to remedies of injunction and other equitable relief to prevent a breach of this Agreement or any provision hereof, which relief shall be in addition to any other remedies, for damages or otherwise, which may be available to Publisher.

12. (a) Publisher may take such action as it deems

necessary, either in Writer's name or in its own name, against any person to protect all rights and interest acquired by Publisher hereunder. Writer will at Publisher's request, cooperate fully with Publisher in any controversy which may arise or litigation which may be brought concerning Publisher's rights and interests obtained hereunder. Publisher shall have the right, it its absolute discretion, to employ attorneys and to institute or defend any action or proceeding and to take any other proper steps to protect the right, title and interest of Publisher in and to each musical composition hereunder and every portion thereof and in that connection, to settle, compromise or in any other manner dispose of any matter, claim, action or proceeding and to satisfy any judgment that may be rendered, in any manner as Publisher in its sole discretion may determine. Any legal action brought by Publisher against any alleged infringer of any musical composition hereunder shall be initiated and prosecuted by Publisher, and if there is any recovery made by Publisher as a result thereof, after deduction of the expense of litigation, including but not limited to attorneys' fees and court costs, a sum equal to fifty (50%) percent of such net proceeds shall be paid to Writer.

(b) If a claim is presented against Publisher in respect to any musical composition hereunder, and because thereof Publisher is jeopardized, Publisher shall have the right thereafter, until said claim has been finally adjudicated or settled, to withhold any and all royalties that may be or become due with respect to such disputed compositions pending the final adjudication or settlement of such claim. Publisher, in addition, may withhold from any and all royalties or other sums that may be due and payable to Writer hereunder, an amount which Publisher deems sufficient, to reimburse Publisher for any contemplated damages, including court costs and attorneys' fees and costs resulting therefrom. Upon the final adjudication or settlement of each and every claim hereunder, all moneys withheld shall then be disbursed in accordance with the final adjudication or settlement of said claim.

13.  Any written notice, statement, payment or matter required or desired to be given to Publisher or Writer pursuant to this Agreement shall be given by addressing the same to the addresses of the respective parties referred to herein, or to such other address as either party, and such notice shall be deemed to have been given on the date when same shall be deposited, so addressed, postage prepaid, in the United States mail, or on the date when delivered, so addressed, toll prepaid, to a telegraph or cable company.

14. This Agreement supersedes any and all prior negotiations, understandings, and agreements between the parties hereto with respect to the subject matter hereof. Each of the parties acknowledges and agrees that neither party has made any representations or promises in connection with this Agreement or the subject matter hereof not contained herein.

15. This Agreement may not be cancelled, altered, modified, amended or waived, in whole or in part, in any way, except by an instrument in writing signed by both Publisher and Writer. The waiver by Publisher of any breach of this Agreement in any one of more instances, shall in no way be construed as a waiver of any subsequent breach (whether or not of a similar nature) of this Agreement by Writer. If any part of this Agreement shall be held to be void, invalid or unenforceable, it shall not affect the validity of the balance of this Agreement. This Agreement shall be governed by and construed under the laws and judicial decisions of the State of Michigan applicable to agreements executed in and to be wholly performed therein.

16. This Agreement may not be assigned by Writer. Subject to the foregoing, this Agreement shall inure to the benefit of and be binding upon each of the parties hereto and their respective successors, assigns, heirs, executors, administrators and legal and personal representatives.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

PUBLISHER
BRIDGEPORT MUSIC, INC.

BY: _____
ARMEN BOLADIAN

WRITER
_____

## ADDENDUM TO WRITERS AGREEMENT

Notwithstanding anything to the contrary contained within the Writers Agreement dated the 2 day of DECEMBER, 1983, by and between GEORGE CLINTON, hereinafter referred to as "Writer" and BRIDGEPORT MUSIC, INC., hereinafter referred to as "Publisher":

1. It is understood and agreed that it is the intention of Publisher and Writer that Writer shall be Publisher's "employee for hire" hereunder within the meaning of the United States Copyright Act of 1976, Title 17, U.S.C. (hereafter the "Copyright Act"); that each of the Compositions acquired by Publisher hereunder shall be a "work made for hire" within the meaning of the Copyright Act; and that, upon creation of each of the Compositions, all rights of whatsoever nature therein and thereto, and in and to each and every arrangement, version and adaptation thereof, shall vest in Publisher. Publisher shall have the right, in its sole discretion, to cause the Compositions to be copyrighted in the name of Publisher as author thereof, and/or in the name of Publisher's assignee or designee.

2. It is understood and agreed that the Writers Agreement is with respect to the songwriting services of Writer whether the songs are written in his own name or in an assumed name.

3. It is further understood and agreed that, notwithstanding the royalties provided for in the Writers Agreement, Writer hereby grants to Publisher the right to retain all royalties listed in Paragraph 7 of the Writers Agreement for its own account. This shall not, however, prevent Writer from receiving royalties from the American Society of Composers, Authors and Publishers (ASCAP) or Broadcast Music, Inc. (BMI) or any

-2-

public performance rights organization which pays performance royalties directly to songwriters.

4. It is understood and agreed that valuable consideration has been received by Writer with respect to the Writers Agreement and this Addendum.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum as of the day and year first above written.

WITNESS:

_____

_____

PUBLISHER: BRIDGEPORT MUSIC, INC. by:

_____
ARMEN BOLADIAN

WRITER:

_____
GEORGE CLINTON

-2-