# EXHIBIT 5

## EXCLUSIVE SONGWRITER'S AGREEMENT

AGREEMENT made this __4th__ day of April, 1985 by and between George Clinton ("Writer") and Bridgeport Music, Inc. ("Publisher").

FOR AND IN CONSIDERATION of the mutual covenants herein set forth, the parties do hereby agree as follows:

1.  Publisher hereby employs Writer, and Writer hereby accepts such employment, to render Writer's exclusive services in the writing and composing of original musical compositions, numbers and works to Publisher for a period of five (5) years from the date hereof (the "Term"), both alone and in collaboration with others, as directed and required by Publisher in its sole discretion.

2.  It is understood and agreed that all compositions made and created by Writer, alone or in collaboration with others during the Term hereof (the "Compositions"), shall be the sole property of Publisher, throughout the world, together with all copyrights and all other rights of whatsoever nature therein, for and during the full term of said copyrights and any and all extensions and renewals thereof.

Publisher and Writer affirm that it is their intention that Writer shall be Publisher's "employee for hire" hereunder within the meaning of the United States Copyright Act of 1976, Title 17, USC (hereafter, the "Copyright Act"); that each of the Compositions acquired by Publisher hereunder shall be a "work made for hire" within the meaning of the Copyright Act; and that, upon creation of each of the Compositions, all rights of whatsoever nature therein and thereto, and in and to each and every arrangement, version and adaptation thereof, shall vest in Publisher, which rights shall include without limitation, the worldwide copyrights therein and all termination and reversionary rights

LAW OFFICES HERTZ AND SCHRAM, P.C., 1080 N. WOODWARD, BIRMINGHAM, MI 48011 (313) 644-5905

AQ    23

BOLADIAN09454

with respect thereto under the Copyright Act of otherwise, the right to secure copyrights throughout the world, and all other rights of whatsoever nature, both legal and equitable therein, thereto and thereunder, including but not limited to, the sole and exclusive world-wide publication, mechanical instrument, electrical transcription, and motion picture and television synchronization rights, and the right of public performance for profit by any and all means and through any and all media, and all other rights now known or hereafter to become known.  WRITER shall, immediately after the creation of each of the Compositions, provide PUBLISHER with a lead sheet with respect thereto suitable for filing in the Copyright Office.  PUBLISHER shall have the right, in its sole discretion, to cause the Compositions to be copyrighted in the name of PUBLISHER as author thereof, and/or in the name of PUBLISHER's assignee or designee.

3.  During the term of this Agreement, WRITER shall not write, or compose, or furnish or dispose of, any musical compositions (including but not limited to, the Compositions) or any rights or interests therein, whatsoever other than for and to PUBLISHER.

4.  PUBLISHER shall have the right to use the name (real and assumed), photographs and likenesses of WRITER, and biographical material pertaining to WRITER in publicizing, advertising, exploiting, distributing and selling the Compositions.

5.  WRITER shall not be entitled to receive any compensation or remuneration other than as in this Agreement specifically provided, and PUBLISHER, its assigns and licensees shall not be obligated to anyone in respect of the Compositions other than as in this Agreement specifically provided.

6.  PUBLISHER undertakes to use its best efforts to exploit the Compositions and to derive maximum income therefrom. PUBLISHER, however, reserves the right to determine, in its sole discretion, the manner, extent and means of exploiting the Compositions.

-2-

AO   24

BOLADIAN09455

7. PUBLISHER shall pay to WRITER as total compensation for the services rendered by WRITER hereunder the following royalties with respect to the Compositions:

(a) Six ($.06) cents per copy for each and every regular piano-forte copy thereof published and sold by and paid for to PUBLISHER in the United States and Canada.

(b) Ten (10%) percent of the wholesale selling price (after trade discount, if any) for each and every printed copy of each and every other arrangement and edition thereof published and sold by and paid for to PUBLISHER in the United States and Canada, except that in the event the Compositions shall be used or caused to be used in whole or in part in conjunction with one or more musical compositions other than the Compositions in a folio or album, WRITER shall be entitled to receive that proportion of said ten (10%) percent which the Compositions shall bear to the total number of musical compositions contained in such folio or album. PUBLISHER shall not be required to pay any royalties on professional or complimentary copies or any copies which are distributed gratuitously to performing artists or orchestra leaders or for advertising or exploitation purposes.

(c) Fifty (50%) percent of any and all net royalties actually earned by the Compositions and actually received by PUBLISHER from mechanical rights, electrical transcriptions, reproducing rights, motion picture synchronization and television rights, and all other rights (except as otherwise specifically provided for herein) therein in the United States and Canada, except that WRITER shall not be entitled to share in, nor shall PUBLISHER be obligated to pay a royalty with respect to, any sum or sums received by PUBLISHER from the American Society of Composers, Authors and Publishers (ASCAP) or Broadcast Music, Inc. (BMI) or any public performance rights organization which pays performance royalties directly to songwriters. WRITER agrees that PUBLISHER may deal with any affiliated record company undertaking the effort and expense of recording and/or promoting

-3-

LAW OFFICES HERTZ AND SCHRAM, P.C. 1080 N. WOODWARD, BIRMINGHAM, MI 48011 (313) 644-8905

AQ    25

BOLADIAN09456

phonograph records embodying a Composition, on such terms as PUBLISHER shall in its reasonable business judgment deem proper, including the licensing of said Composition for mechanical use at less than the statutory rate therefor. PUBLISHER shall not be required to pay royalties earned by reason of the public performance of the Compositions; said royalties being payable only by the performing rights society with which WRITER is or may in the future become affiliated.

(d)  Fifty (50%) percent of any and all net royalties actually earned by the Compositions and actually received by PUBLISHER from sales and uses (other than public performance uses for which WRITER is paid by any public performance rights organization) of the Compositions in countries outside of the United States and Canada.  It is understood that in such countries publication and/or other exploitation may be made by any affiliate, assignee, representative or licensee of PUBLISHER.

8.  PUBLISHER agrees to pay to WRITER, or upon WRITER's death, to the person or persons legally entitled thereto, the royalties provided herein.

The royalties provided herein shall be paid to WRITER in those instances where WRITER is the sole creator and composer of the Composition.  With regard to each of the Compositions created by WRITER with others, WRITER shall be paid only a portion of said royalties, which portion shall be determined by dividing the royalties payable by the total number of writers inclusive of WRITER, unless a different division of royalties is agreed upon by all such writers and written notice thereof, signed by all such writers, is furnished to PUBLISHER upon delivery to PUBLISHER of such a Composition.

9.  PUBLISHER agrees that it will render statements and pay royalties due to WRITER within ninety (90) days after the last days of June and December of each year.  The payment to be made shall be of all royalties earned by WRITER and due and owing at the end of such semi-annual periods.  Said statements and payments, in the

-4-

LAW OFFICES HERTZ AND SCHRAM, P.C., 1080 N. WOODWARD, BIRMINGHAM, MI 48011 (313) 644-5905

AO    26

BOLADIAN09457

absence of written objection thereto by WRITER within one (1) year from receipt thereof, shall constitute an account stated as to all royalties due for the period covered by such statement and/or payment. WRITER or a certified public accountant in his behalf may, at WRITER's expense, at reasonable intervals, examine PUBLISHER's books insofar as same concern WRITER, during PUBLISHER's usual business hours and upon reasonable notice, for the purpose of verifying the accuracy of any statement rendered to WRITER hereunder. PUBLISHER's books relating to activities during any accounting period may only be examined as aforesaid during the one (1) year period following service by PUBLISHER of the statement for said accounting period. PUBLISHER's books may not be examined pursuant to this paragraph more than two (2) times in any year.

10. WRITER hereby consents that this Agreement, the Compositions and all copyrights and other rights, granted PUBLISHER hereunder, may be assigned by PUBLISHER either expressly or by operation of law subject, however, to the payment of the royalties to WRITER heretofore provided.

11. WRITER hereby agrees that during the Term of this Agreement and any extension thereof, WRITER will obtain PUBLISHER's approval of any person with whom WRITER shall collaborate. PUBLISHER shall be deemed to approve any such collaborator who is a member of the same performing rights society as WRITER and who agrees, in writing, to grant to PUBLISHER upon the same royalty terms, the same rights in the Compositions that are the subject of such collaboration as PUBLISHER acquires from WRITER hereunder.

12. WRITER warrants and represents and undertakes and agrees: that each of the Compositions and each and every part thereof will be original and will not infringe upon any other musical or other material and that WRITER shall hold PUBLISHER and all other parties in interest harmless by reason of any and all claims in respect thereof and any and all obligations incurred by PUBLISHER and all

-5-

BOLADIAN09458

other parties in interest and any and all disbursements and expen-
ditures of every nature whatsoever made by PUBLISHER and all other
parties in interest in settling, paying and defending any and
all claims and any and all litigation arising therefrom.  PUBLISHER
shall have the right, in the event of any claim arising out of or
relating to any breach or alleged breach of this agreement by
WRITER, to withhold from WRITER sums due or to become due hereunder
to WRITER in amounts reasonably related to such claim, pending
disposition of such claim.  PUBLISHER and all other parties in
interest shall have the right to defend against any such claims
and any and all actions and proceedings instituted upon the same,
and to settle the same before or after suit, for such amount and
upon such terms as PUBLISHER and all other parties in interest
shall, in its and their sole discretion, deem advisable.

   13.  WRITER further warrants and represents that WRITER has
the full right, power and authority to enter into this Agreement,
and vest in PUBLISHER all of the rights granted PUBLISHER herein
free and clear of any and all claims, rights and obligations
whatsoever.

   14.  It is specifically understood and agreed that the
services of WRITER to be rendered under this Agreement in writing
and composing are unique, exceptional and extraordinary and
cannot be replaced, and that in the event of violation by WRITER
of any of the terms, covenants or conditions of this Agreement,
PUBLISHER and all other parties in interest shall be entitled
to injunctive relief in addition to all other rights and remedies.
It is further specifically understood and agreed that this Agree-
ment is for the personal services of WRITER and that the obliga-
tions of WRITER hereunder shall not, in any event, be dischargeable
in any bankruptcy or insolvency proceedings or in any way be
affected thereby.  WRITER agrees to perform his services here-
under to the best of his ability, in a first class manner and
consistent with the highest standards of the music publishing
and songwriting industry, and WRITER will promptly and faithfully

-6-

AQ      28

BOLADIAN09459

comply with all reasonable requests and decisions made by PUBLISHER.

15. In respect of the Term, and each Option Year, WRITER will deliver to PUBLISHER not less than twelve (12)    complete compositions of marketable commercial quality newly-written by WRITER. The delivery of said Compositions shall be reasonably evenly spaced over the Term and each Option Year hereof respectively. At least one (1) Composition shall be delivered during each month of the Term and each Option Year. For purposes of this paragraph:

(a) A Composition written or composed by WRITER in collaboration with others shall be treated as a fraction of a Composition by WRITER, the numerator of which fraction shall be one (1), and the denominator of which shall be the applicable number of writers and composers.

(b) "Marketable commercial quality" as used herein, shall in the event of a dispute between WRITER and PUBLISHER as to the meaning thereof with respect to any Composition written by WRITER, have such meaning with respect to such Composition as is determined by a panel consisting of one member chosen by WRITER and one member chosen by PUBLISHER and one impartial member selected by the performing rights society which controls the performing rights in the Composition.

16. WRITER hereby grants to PUBLISHER two (2) separate options, each to renew this Agreement for one (1) additional year, ("Option Year(s)"), such Option Years to run consecutively beginning at the expiration of the Term, all upon the same terms and conditions applicable to the Term. Notwithstanding that each Option Year hereof shall run for a period of one (1) year, in the event that the Term of any Option Year shall be extended beyond one (1) year by operation any of the provisions hereof, then such Option Year shall not expire until the expiration of the preceding Option Year plus one (1) year plus such extension(s); and no such extension(s) shall in any way shorten the duration of

-7-

LAW OFFICES HERTZ AND SCHRAM, P.C. 1080 N. WOODWARD. BIRMINGHAM, MI 48011 (313) 644-5905

AO    29

BOLADIAN09460

any other Option Year. Each option shall be exercised automatically unless PUBLISHER notifies WRITER of PUBLISHER's intent to terminate this Agreement at least thirty (30) days prior to the date that the next Option Year would otherwise begin.

17. WRITER hereby consents to such changes, editing and arrangements of the Compositions as PUBLISHER deems desirable including the setting of words (English and/or foreign) to the music, and of music to the words, and the change of title. PUBLISHER shall have the right to copyright any such versions or derivative works in its own name and retain all rights therein for the full term of protection therein, and renew and extend such copyrights as provided within the Copyright Act.

18. Although PUBLISHER undertakes to use its best efforts to exploit the Compositions hereunder, PUBLISHER's failure to exploit any or all of said Compositions shall not be deemed a breach of this Agreement. PUBLISHER's rights and remedies pursuant to this Agreement shall be cumulative and PUBLISHER's exercise of its rights under any one provision of this Agreement or its rights at law shall not be deemed an election of remedies. The waiver by PUBLISHER or by any other party in interest through PUBLISHER of any of the terms or provisions of this Agreement in any one or more instances, shall not be deemed a permanent waiver thereof; such waived term or provisions shall therafter remain and continue in full force and effect.

19. PUBLISHER at its sole discretion may reasonably make studio facilities available for WRITER so that WRITER, subject to the supervision and control of PUBLISHER, may make demonstration records of musical compositions hereunder and also for WRITER to perform at such recording sessions when desired by PUBLISHER. WRITER shall not incur any liability for which PUBLISHER may be responsible in connection with any demonstration record session without having first obtained PUBLISHER's written approval as to the nature, extent and limit of such liability. In no event shall WRITER incur any expense whatsoever in behalf of PUBLISHER without

-8-

LAW OFFICES HERTZ AND SCHRAM, P.C., 1060 N. WOODWARD, BIRMINGHAM, MI 48011 (313) 644-5905

AQ    30

BOLADIAN09461

first having received written authorization from PUBLISHER. WRITER shall not be entitled to any compensation (in addition to such compensation as may be otherwise provided for herein) with respect to services rendered in connection with such demonstration record recording session.    PUBLISHER shall advance the costs for the production of demonstration records, one-half (1/2) of such costs shall be deemed additional non-returnable advances to WRITER and shall be deducted from royalties payable to WRITER by PUBLISHER under this or any other agreement between the parties. All recordings and reproductions made at demonstration recording sessions hereunder shall become the sole and exclusive property of PUBLISHER, free of any claims whatsoever by WRITER or any person deriving any rights from WRITER.

   20.   WRITER shall, from time to time, at PUBLISHER's reasonable request, whenever the same will not unreasonably interfere with other professional engagements of WRITER, appear for photography, artwork and other similar reasons under the direction of PUBLISHER or its duly authorized agent, appear for interviews and other promotional purposes, and confer and consult with PUBLISHER regarding WRITER's services hereunder.   WRITER shall also cooperate with PUBLISHER in promoting, publicizing and exploiting the musical compositions hereunder and for any other purpose related to the business of PUBLISHER.   WRITER shall not be entitled to any compensation (other than applicable union scale if appropriate) for rendering such services, but shall be entitled to reasonable transportation and living expenses if such expenses must be incurred in order to render such services.

   21.   WRITER agrees to execute and deliver to PUBLISHER, upon demand, any and all instruments, papers and documents that may be requested by PUBLISHER for the purpose of confirming, protecting and exercising any rights granted to PUBLISHER hereunder.   In the event of the failure or refusal of WRITER to execute and deliver any of the same upon demand WRITER hereby authorizes and empowers PUBLISHER as his attorney-in-fact to execute and deliver

-9-

LAW OFFICES HERTZ AND SCHRAM, P.C. 1080 N. WOODWARD, BIRMINGHAM, MI 48011 (313) 644-5905

AO    31

BOLADIAN09462

same in WRITER's name.  The power of attorney herein granted is coupled with an interest and shall be irrevocable.

22.  Notwithstanding anything contained herein, all musical compositions previously written by WRITER and not vested by a binding written agreement in another publisher, including, but not limited to, those listed on Exhibit A, annexed hereto and made part hereof, are hereby deemed to have been written under and pursuant to this Agreement and to be "Compositions" hereunder, provided, however, that said previously written musical composi-tions (hereafter, the "Other Compositions") shall be subject to the following additional terms and conditions.

Simultaneously with the execution hereof, WRITER shall execute a short form assignment from WRITER to PUBLISHER with respect to the Other Compositions in the form attached hereto as Exhibit B.

WRITER and PUBLISHER hereby acknowledge that the copy-rights and certain other rights in the Other Compositions vested in PUBLISHER pursuant hereto may be terminated by WRITER or his successors (hereafter, individually and collectively, "WRITER") in accordance with the provisions of the Copyright Act.  WRITER and PUBLISHER further acknowledge that it is their intention that, in the event that any such copyrights and other rights are terminated by WRITER, PUBLISHER shall have the exclusive right of first refusal with respect thereto, which right of first refusal shall be exercised as follows.

Until expiration of a period of sixty (60) days following PUBLISHER's receipt of a valid notice of termination with respect to any such copyrights and other rights, WRITER shall not nego-tiate with any third party with respect to the grant, sale, assign-ment, license or other transfer thereof.  During said sixty (60) day period, WRITER agrees to negotiate with PUBLISHER in good faith and to exert best efforts to reach agreement with PUBLISHER for PUBLISHER's acquisition of such copyrights and other rights.

-10-

LAW OFFICES HERTZ AND SCHRAM, P.C., 1090 N. WOODWARD, BIRMINGHAM, MI 48011 (313) 644-8905

AO    32

BOLADIAN09463

In the event that PUBLISHER and WRITER fail to reach agreement by the end of said sixty (60) day period, WRITER shall be free to negotiate with third parties for the grant, sale, assignment license or other transfer of such copyrights and other rights, only for terms and conditions more favorable to WRITER than those last offered by PUBLISHER. If WRITER receives such an offer from a bona fide third party, which offer WRITER wishes to accept, WRITER shall notify PUBLISHER of the terms thereof in writing and PUBLISHER shall have ten (10) days from its receipt thereof to notify WRITER in writing that it desires to acquire the copyrights and other rights subject to such offer on the terms and conditions contained therein. In the event that PUBLISHER so notifies WRITER, said copyrights and other rights shall automatically vest in PUBLISHER, and WRITER shall enter into a written agreement with PUBLISHER reflecting such terms and conditions promptly after WRITER's receipt of the aforesaid notice. In the event that PUBLISHER does not so notify WRITER and WRITER does not accept such third party offer, the foregoing procedures shall apply to any future offers which WRITER receives and wishes to accept, including any offer containing identical terms and conditions previously rejected by WRITER, whether received by WRITER from the same or a different third party.

Nothing contained in this Paragraph 22 shall be deemed applicable to any of the Compositions other than the Other Compositions, except in the event that WRITER is adjudged by a court of competent jurisdiction not to be PUBLISHER's "employee for hire" and that the Compositions are not "works made for hire" within the meaning of the Copyright Act, in which event PUBLISHER shall have the same rights in the Compositions as PUBLISHER has with respect to the Other Compositions hereunder, including but not limited to, the exclusive right of first refusal hereinabove described, and WRITER shall be deemed to have executed, as of the date of creation of any such Composition, an assignment with respect thereto from WRITER to PUBLISHER in the form of

-11-

BOLADIAN09464

assignment affixed hereto and made part hereof as Exhibit "B".
PUBLISHER may execute such an assignment in WRITER's name pursuant
to PUBLISHER's rights under Paragraph 19 above.

23. All copyrights and other rights vested in PUBLISHER
during the Term hereof shall survive the termination of this
Agreement to the fullest extent permitted under the Copyright Act.

24. The term "PUBLISHER" as used throughout this Agreement
shall be deemed to apply to PUBLISHER and its designees, successors
and assigns.

25. All notices which PUBLISHER shall desire or be required
to give to WRITER hereunder and all statements, royalties and
other payments which are due WRITER hereunder shall be addressed
to WRITER at the address set forth below WRITER's signature, until
WRITER shall give PUBLISHER written notice of a new address.
All notices which WRITER shall desire or be required to give
PUBLISHER hereunder shall be addressed to PUBLISHER at its address
set forth below, until PUBLISHER shall give WRITER notice of a new
address. All notices may be delivered to WRITER or PUBLISHER
personally or served by mail or telegraph addressed as aforesaid.
The date of making personal service or mailing or deposit in a
telegraph office, whichever shall be first, shall be deemed the
date of service.

26. Any sums which are advanced to WRITER shall be at
PUBLISHER's sole discretion. Any such sums advanced to WRITER
shall be deducted by PUBLISHER from all sums theretofore due to
WRITER hereunder and from all sums thereafter due to WRITER here-
under.

27. WRITER agrees that in the event, in the opinion of WRITER,
PUBLISHER has breached this Agreement, WRITER shall deliver to
PUBLISHER by registered mail, return receipt requested, a written
notice specifying all such breach(es) and PUBLISHER shall have
sixty (60) days from the receipt by PUBLISHER of such written
notice to substantially cure such breach(es). Such alleged
breach(es) shall not be grounds for any action, claim, or

-12-

LAW OFFICES HERTZ AND SCHRAM, P.C. 1080 N. WOODWARD, BIRMINGHAM, MI 48011 (313) 644-5905

AO    34

BOLADIAN09465

## RIDER TO EXCLUSIVE SONGWRITER'S AGREEMENT

This Rider is to the Exclusive Songwriter's Agreement dated the 4th day of April, 1985 between Bridgeport Music, Inc. and George Clinton. This Rider is hereby made part of the Exclusive Songwriter's Agreement and each instance in which the provisions or any parts thereof of this Rider shall contradict or be inconsistent with provisions or any parts thereof of said Agreement as constituted without this Rider, shall prevail and govern and the contradicted or inconsistent provisions of said Agreement shall be deemed amended accordingly.

1. It is understood and agreed that the Exclusive Songwriter's Agreement is with respect to the songwriting services of George Clinton whether the songs are written in his own name or in an assumed name.

2. It is further understood and agreed that, notwithstanding the royalties provided for in the Exclusive Songwriter's Agreement, George Clinton hereby grants to Bridgeport Music, Inc. the right to retain all royalties listed in Paragraph 7 of the Exclusive Songwriter's Agreement for its own account. This shall not, however, prevent George Clinton from receiving royalties from the American Society of Composers, Authors and Publishers (ASCAP) or Broadcast Music, Inc. (BMI) or any public performance rights organization which pays performance royalties directly to songwriters.

3. It is understood and agreed that valuable consideration has been received by George Clinton with respect to the Exclusive Songwriter's Agreement and this Rider.

IN WITNESS WHEREOF, the parties hereto have executed this Rider as of the day and year first above written.

WITNESS:                              PUBLISHER:  BRIDGEPORT MUSIC, INC.

_____               by:_____
                                          Armen Boladian
_____
                                      WRITER:_____
                                              George Clinton

BOLADIAN09466

IN WITNESS WHEREOF, the undersigned has caused this transfer
of copyright(s) to be executed this _____ day of _____,
198___.

By: _____

<div style="writing-mode: vertical">LAW OFFICES HERTZ AND SCHRAM, P.C., 1080 N. WOODWARD, BIRMINGHAM, MI 48011 (313) 644-5905</div>

STATE OF MICHIGAN)
                 )SS
COUNTY OF OAKLAND)

On this _____ day of _____, 198___, the above-named
person(s) personally appeared before me and made oath that the
above-stated is true and correct to their knowledge and belief.


_____

Notary Public
My Commission expires_____

-2-

AQ      36

BOLADIAN09467

TRANSFER OF COPYRIGHT

    For and in consideration of the sum of One Dollar ($1.00)
and other good and valuable consideration, the receipt of which
is hereby acknowledged, the undersigned (and each of them if
there is more than one) hereby irrevocably transfers and assigns
to
on the one hand, its successors and assigns, _____
percent (    %) of the entire worldwide copyright and any and
all other rights, including any renewals and extensions of copy-
right and any and all other rights in and to the musical compo-
sition(s) now entitled:

|  |  | COPYRIGHT REG. NO. |
| --- | --- | --- |
| TITLE | WORDS/MUSIC BY | (if any) |

(hereinafter referred to as the "Composition") including the
title, music and lyrics thereof and all arrangements thereof and
the right to arrange, adapt, and create derivative works from
the Composition, together with all copyrights and any and all
other rights therein and thereto throughout the world, all under
any law, statute, treaty or regulation heretofore, now or here-
after existing, enacted or promulgated together with all claims,
demands and causes of action heretofore, now or hereafter exist-
ing for the use of the Composition or infringement of the copy-
right therein or any other legal or equitable right to the use
and ownership thereof in any and all fields of use now or here-
after existing throughout the world and otherwise throughout the
universe by any means or technology now known or hereafter exist-
ing.

AO    37

BOLADIAN09468

EXHIBIT "B"

Assignment of Copyrights

LAW OFFICES HERTZ AND SCHRAM, P.C., 1080 N. WOODWARD, BIRMINGHAM, MI 48011 (313) 644-5905

AO    38

BOLADIAN09469

EXHIBIT "A"

OTHER COMPOSITIONS

LAW OFFICES HERTZ AND SCHRAM, P.C., 1080 N. WOODWARD, BIRMINGHAM, MI 48011 (313) 644-5905

A&Q   39

BOLADIAN09470

proceeding, whether at law or in equity, with respect to this Agreement until the expiration of said sixty (60) day period and unless during said sixty (60) day period Publisher has not substantially cured same.

28. This Agreement shall be construed and governed under and by the laws of the State of Michigan, applicable to agreements wholly to be performed therein. If any part of this Agreement shall be invalid or unenforceable, it shall not affect the validity of the balance of this Agreement. This Agreement shall not become binding on Publisher unless signed by Writer and duly countersigned by Publisher.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

BRDIGEPORT MUSIC, INC. by:

Armen Boladian, its
President
24361 Greenfield, #201
Southfield, MI 48075

WRITER by:

George Clinton

839 Knapp Hwy.
Brooklyn, MI 49230

_____
(birthdate)

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

-13-

AO    40

BOLADIAN09471