IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GEORGE CLINTON,

    *Plaintiff,*

v.                                    Case No. 4:25cv108-MW/MJF

ARMEN BOLADIAN;
BRIDGEPORT MUSIC, INC.;
WESTBOUND RECORDS, INC.;
NINE RECORDS, INC.;
SOUTHFIELD MUSIC, INC.; AND
EASTBOUND RECORDS, INC.,

    *Defendants.*

_____/

## DECLARATION OF ARMEN BOLADIAN IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

I, Armen Boladian, hereby declare as follows:

1. I am a Defendant in this action. I make this Declaration from my personal knowledge, and if called as a witness, I could and would competently testify hereto except where stated upon information and belief. I make this declaration in support of *Defendants' Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure and Memorandum of Law in Support*.

2. I have been the sole owner of Defendant corporations Bridgeport Music, Inc. ("Bridgeport"), Westbound Records, Inc. ("Westbound"), Nine Records, Inc. ("Nine"), Southfield Music, Inc. ("Southfield") and Eastbound Records, Inc. ("Eastbound"), since the 1960s.

3. Westbound and Eastbound are my record labels, and they own sound recordings. Westbound is distributed by Nine Records. Eastbound and Nine Records have no ties to Plaintiff George Clinton's claims in this action.

4. Bridgeport is my publishing company, and it owns and administers musical compositions. Bridgeport is affiliated with BMI. Southfield is another publishing company that I own which administers musical compositions and is affiliated with ASCAP. All shares for the works at issue in this litigation are controlled by Bridgeport, and Southfield is not in possession of any of Clinton's shares of any of the works at issue.

5. Mr. Clinton and I met in the 1960s, and he and his group "The Funkadelics" began recording for my label Westbound in approximately 1969.

6. In 1972, Mr. Clinton and I entered into a work for hire agreement in which he agreed that Westbound owned the sound recordings he recorded for Westbound.

7. Mr. Clinton wished to leave Westbound in 1975 to pursue other opportunities, and therefore we executed another agreement confirming that Westbound owned all sound recordings ever recorded by Mr. Clinton for Westbound.

8. In 1971, Bridgeport and Mr. Clinton (on behalf of his music publishing company, Malbiz Music, Inc.) entered into a co-publishing agreement, splitting 50/50 the ownership of all musical compositions written by Mr. Clinton and owned by Malbiz during the time Mr. Clinton recorded for Westbound.

9. On March 4, 1982, Bridgeport and Mr. Clinton, on behalf of Malbiz, entered into an agreement in which Malbiz assigned to Bridgeport ownership of certain songs.

10. On December 2, 1983, Bridgeport and Mr. Clinton, on behalf of Malbiz, entered into several agreements, including an "Addendum" to the March 4, 1982, agreement in which Mr. Clinton, on behalf of Malbiz, assigned to Bridgeport all of Malbiz's interest in all songs Mr. Clinton wrote or co-wrote prior to March 4, 1982, including the songs that were subject to the March 4, 1982 agreement.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 23, 2025                         By: /s/Armen Boladian

                                                              **Armen Boladian**

Case 4:25-cv-00108-MW-MJF   Document 37-1   Filed 07/03/25   Page 4 of 4