## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**GEORGE CLINTON,**

      *Plaintiff*,

v.                            **Case No.: 4:25cv108-MW/MJF**

**ARMEN BOLADIAN, et al.,**

      *Defendants*.

_____/

## ORDER GRANTING IN PART MOTION TO DISMISS, GRANTING MOTION TO STRIKE, AND DENYING MOTION FOR SANCTIONS

This Court has considered, without hearing, Defendants' motion to dismiss, or in the alternative to strike, ECF No. 36, Defendants' motion for sanctions, ECF No. 37, Plaintiff's response in opposition to Defendants' motion to dismiss, ECF No. 45, Plaintiff's response in opposition to Defendants' motion for sanctions, ECF No. 46, Defendants' consolidated reply in support of their motions, ECF No. 49, Plaintiff's surreply, ECF No. 56, and Defendants' surresponse, ECF No. 57. For the following reasons, the motion to dismiss, ECF No. 36, is **GRANTED in part** and **DENIED in part**, the alternative motion to strike is **GRANTED**, and the motion for sanctions, ECF No. 46, is **DENIED.**

## MOTION TO DISMISS

In deciding Defendants' motion to dismiss, this Court accepts Plaintiff's factual allegations as true and construes them in the light most favorable to Plaintiff.

*Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1221 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

This case involves a dispute over the copyrights to numerous musical works created by Plaintiff George Clinton ("Plaintiff"). Decades ago, Plaintiff granted the rights to these works to entities owned by Defendant Armen Boladian ("Boladian"). These entities are Defendants Westbound Records, Inc. ("Westbound"), a record label, and Bridgeport Music, Inc. ("Bridgeport"), a publishing company. Now, Plaintiff seeks to terminate those grants and reclaim ownership of the copyrights by utilizing procedures of the Copyright Act of 1976.

Sections 203 and 304 of the Copyright Act of 1976 govern the termination of copyright grants. 17 U.S.C. §§ 203, 304(c). These sections enable an author to terminate copyright grants after specified periods of time by following certain written notice procedures. 17 U.S.C. §§ 203(a)(4), 304(c)(4). Section 203 pertains

to copyright grants made after 1978 and allows an author to terminate a grant starting 35 years after its execution. 17 U.S.C. § 203. Section 304 pertains to copyright grants made before 1978 and allows an author to terminate the grant starting 56 years after its execution. 17 U.S.C. § 304(c). Effective termination under either section causes all copyrights that were covered by the terminated grants to revert to the author. 17 U.S.C. §§ 203(b), 304(c)(6). However, a copyright in a "work made for hire" cannot be terminated. 17 U.S.C. §§ 203(a), 304(c).

Plaintiff sent written notices to Defendants, seeking to terminate their copyright grants to (1) sound recordings held by Westbound (the "Westbound Sound Recordings") pursuant to section 304 and (2) musical compositions held by Bridgeport (the "Bridgeport Musical Compositions") pursuant to section 203. In the first amended complaint, Plaintiff seeks declaratory judgments that these termination notices are valid and that all copyrights to the musical works revert to him. Plaintiff also brings related causes of action for copyright infringement, fraud, and injunctive relief.

Defendants move to dismiss all counts of the first amended complaint on both procedural and substantive grounds. Procedurally, Defendants argue that documents from past legal proceedings involving the parties bar Plaintiff's claims and/or preclude him from relitigating certain issues. Substantively, Defendants argue that the Westbound Sound Recordings and Bridgeport Musical Compositions are works

made for hire and therefore their copyrights to those works cannot be terminated. Defendants claim that the terms of the relevant agreements memorializing the copyright grants prove this.[1] Additionally, Defendants move to dismiss several other named parties—Nine Records, Inc. ("Nine"), Southfield Music, Inc. ("Southfield"), and Eastbound Records Inc. ("Eastbound")—from this action.

This Order proceeds as follows. This Court begins with the declaratory judgment counts. This Court first considers the threshold issue of whether the claims are ripe, before addressing Defendants' procedural arguments as they relate to the Westbound Sound Recordings and Bridgeport Musical Compositions respectively, and finally turning to the substantive work for hire issue. Next, this Court addresses Plaintiff's related copyright infringement, fraud, and injunctive relief counts. Finally, this Court considers whether Defendants Nine, Southfield, and Eastbound should be dismissed from this action.

I.    The Declaratory Judgment Counts

A. Ripeness

Sections 203 and 304 state that upon "the effective date[s] of termination" all rights that were covered by the terminated grants revert to the author. 17 U.S.C.

---

[1] This Court has taken judicial notice of both the past litigation documents and these agreements, ECF No. 58, and is entitled to review them for purposes of evaluating the arguments in Defendants' motion. *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

§§ 203(b), 304(c)(6). Here, Plaintiff's termination notices contain effective dates of termination that have not yet passed. *See* ECF No. 32-3 at 5 (showing the earliest effective termination date relating to any Westbound Sound Recording is December 2, 2028); ECF No. 32-1 at 130–38 (listing Bridgeport Musical Compositions the grants to which have effective termination dates of March 1, 2026).[2] This raises the threshold issue of whether Plaintiff's declaratory judgment claims, which seeks a judicial determination that "Plaintiff's termination notices are valid, effective, and that the remaining copyrights identified in the notices automatically revert to George Clinton on the corresponding termination date of each copyright work," ECF No. 32 ¶¶ 69, 77, are ripe for adjudication. This Court finds that they are.

"The question of ripeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Interstate Fire & Cas. Co. v. McMurry Constr. Co., Inc.*, No. 616CV841ORL41TBS, 2017 WL 821746, at *3 (M.D. Fla. Mar. 2, 2017) (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983)) (cleaned up).

---

[2] Plaintiff seeks to terminate Defendants' interests in the Bridgeport Musical Compositions pursuant to 17 U.S.C. § 203. *See* ECF No. 32-2. Section 203 applies to grants executed on or after January 1, 1978, and permits an author to terminate a grant 35 years after its execution. Plaintiff's "Master List of Notices of Termination Served" (the "Master List"), ECF No. 32-1, appears to apply this 35-year timeline to all the musical compositions listed therein. This Court notes, however, at least one of the grants enumerated in the Master List were effected by an agreement that predates January 1, 1978. *See* ECF No. 32-1 at 121–29 (listing musical compositions the rights to which were granted via an agreement dated March 17, 1976). As such, the 56-year timeline from section 304(c) properly applies to these grants and therefore the effective date of termination has not passed.

"The question of 'the fitness of the issues for judicial decision' in essence comes down to a decision as to whether the court is presented with an abstract question or a concrete controversy." *Browning-Ferris Indus. of Alabama Inc. v. Alabama Dep't of Env't Mgmt.*, 799 F.2d 1473, 1478 (11th Cir. 1986). When ripeness considerations interact with the federal declaratory judgment standard, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). District courts have considerable discretion in deciding whether to exercise jurisdiction over a declaratory judgment claim. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) ("The Declaratory Judgment Act is an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant . . . It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so.") (cleaned up). *See also* 28 U.S.C. § 2201(a) (providing that district courts "may" exercise jurisdiction over a declaratory judgment claim).

First, Plaintiff's declaratory judgment claims are fit for judicial decision. Plaintiff seeks a determination that his termination notices are valid. Under sections 203 and 304, "[t]he future rights that will revert upon termination of the grant

become vested on the date the notice of termination has been served." 17 U.S.C. §§ 203(b)(2); 304(c)(6)(B). Because Defendants object to the notices, a controversy exists as to whether Plaintiff's future rights have vested. *See Baldwin v. EMI Feist Catalog, Inc.*, No. 11-81354-CIV, 2012 WL 13019195 (S.D. Fla. Dec. 11, 2012). Moreover, the accrual of a cause of action under the Copyright Act is not tied to the effective termination dates but rather to Plaintiff becoming aware that Defendants contest his notices. *See Finch v. Casey*, No. 22-20144-CIV, 2023 WL 1796450 (S.D. Fla. Feb. 7, 2023). If this Court were to withhold consideration until the effective termination dates pass, Plaintiff's claims may be time barred under the Copyright Act's three-year statute of limitations. 17 U.S.C. § 507(b).

Because an actual controversy exists and withholding judgment could result in hardship to Plaintiff, this Court exercises jurisdiction over the declaratory judgment claims.

B. Defendants' Procedural Arguments

Defendants argue that past litigation between the parties either bar Plaintiff's current claims or prevent him from relitigating certain issues relating to whether the Westbound Sound Recordings and Bridgeport Musical Compositions are works for hire. Because Defendants make different arguments with respect to the Westbound Sound Recordings and Bridgeport Musical Compositions, this Court discusses them separately.

1.  The Westbound Sound Recordings

Defendants make two arguments here. First, Defendants argue that a 2022 Michigan action (the "Michigan Litigation") precludes Plaintiff from arguing he did not have an employment relationship with Bridgeport under the theory of judicial estoppel. Second, Defendants argue that a 2011 California action (the "California Litigation"), bars Plaintiff from arguing the Westbound Sound Recordings are not works made for hire under res judicata.

As to the Michigan Litigation, Defendants argue that, because Plaintiff stated that he had an employment relationship with Westbound, he should be estopped from now claiming otherwise. ECF No. 36 at 24–25. The Eleventh Circuit employs a two-part test for applying judicial estoppel: "whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017).

Here, neither part of this test is satisfied. First, Plaintiff's assertion in the Michigan Litigation was not made under oath, but rather in a one-off sentence in a motion for summary judgment. Moreover, Plaintiff's claims in the Michigan Litigation refer to "contracts signed by Westbound's owner in February and March 1974." ECF No. 36-15 at 4. These contracts are not currently before this Court, making Plaintiff's assertions regarding them irrelevant. Finally, whether a party

intends to make a mockery of the judicial system is a fact-intensive inquiry that this Court declines to undertake at the motion to dismiss stage. *RCG Advances, LLC v. Feingold*, No. 23-81128-CIV, 2024 WL 5375563, at *6 (S.D. Fla. Sept. 30, 2024) (noting that a judicial estoppel determination "inherently requires the Court to go beyond the pleadings and engage in factual evaluation," and declining to "resolve the fact-intensive inquiry into Plaintiff's intent at this stage.").

Next, to Defendants' arguments regarding the California Litigation. The California Litigation involved Plaintiff's claims against numerous defendants, including Westbound, stemming from alleged exploitation of the copyrights to certain sound recordings Plaintiff claimed an interest in. In the initial complaint, Plaintiff alleged that no work for hire agreements existed with Westbound governing the sound recordings. ECF No. 36-11 ¶¶40–42. That complaint was dismissed without prejudice for failure to prosecute. ECF No. 36-12. However, when the amended complaint was filed, these allegations were absent, and Plaintiff no longer sought any rights in the sound recordings held by Westbound, instead focusing his claims on another set of sound recordings held by another defendant. ECF No. 36-13. The California court ultimately dismissed the amended complaint with prejudice. ECF No. 36-14.

Defendants argue that Plaintiff is barred from relitigating any issues relating to whether the Westbound Sound Recordings were created under work for hire

agreements because, in the California Litigation, Plaintiff alleged no such agreements existed, before ultimately dropping these allegations and excluding them from his amended complaint. According to Defendants, "[b]y raising, then abandoning claims that there was no work-for-hire agreement with Westbound, Clinton is thus barred under res judicata from reasserting those claims now." ECF No. 36 at 21.

"Res judicata, or claim preclusion, bars relitigation of matters that were litigated or could have been litigated in an earlier suit." *Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992). "In order for claim preclusion to apply, four elements are required: (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) identity of the parties; (4) identity of the causes of action." *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007). The application of res judicata is not strictly mechanical, courts have some discretion in deciding whether it applies. *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011).

This Court finds that res judicata does not apply under these circumstances. The California court did not enter a final judgment on the merits with regard to the sound recordings held by Westbound. The initial complaint, which contained the allegations Defendants take issue with, was dismissed without prejudice. *See Hughes v. Lott*, 350 F.3d 1157, 1161 (11th Cir. 2003) ("A dismissal without prejudice is not

an adjudication on the merits and thus does not have a res judicata effect."). The specific issue of whether the sound recordings were created under work for hire agreements was not ruled upon. This Court declines to find this issue closed and decided simply because Plaintiff dropped these allegations.

Defendants' argument is better characterized as one of collateral estoppel, or issue preclusion, because whether the Westbound Sound Recordings were created under work for hire agreements is an issue of ultimate fact rather than a cause of action itself. *See Kaplan v. Regions Bank*, No. 817CV02701CEHCPT, 2018 WL 3642576, at *3 (M.D. Fla. Aug. 1, 2018) ("res judicata applies to claims, not allegations."). Though this recharacterization does not help Defendants' argument because the work for hire issue was neither litigated nor decided in the California Litigation. *See CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003) ("Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit.").

## 2. The Bridgeport Musical Compositions

Defendants' procedural arguments here stem from this Court's own findings in a 1999 action (the "Florida Litigation"). The Florida Litigation involved claims brought by Plaintiff and his publishing company, Malbiz, that several defendants, including Bridgeport, unlawfully used the copyrights to certain musical compositions and breached various songwriter's agreements by failing to provide

Plaintiff royalties. ECF No. 36-8. Ultimately, summary judgment was granted against Plaintiff on the ground that, because he failed to assert any rights to the copyrights or royalties in his 1984 bankruptcy petition, he was estopped from seeking them in the Florida Litigation. ECF No. 36-9 at 3. The case continued to trial with Malbiz as the sole plaintiff, the primary issue being whether Malbiz had been assigned or retained any interests in the musical compositions. ECF No. 36-10 at 4 ("Your Honor called this trial for the limited purpose, as you know, of determining whether or not Malbiz has a sufficient interest in these compositions to assert a claim in this case, whether it received that interest from Mr. Clinton and whether it retained that interest."). This Court ultimately determined that Malbiz had not been assigned any interests in the relevant musical compositions and retained no interests in them. ECF No. 36-10 at 194–201. In so finding, this Court stated that the December 2, 1983, Writer's Agreement (the "1983 Writer's Agreement") made Plaintiff "the equivalent of an employee-for-hire of Bridgeport" with respect to the works created from that point forward. ECF No. 36-10 at 199.

Defendants make two preclusion arguments with respect to the Florida Litigation. First, Defendants argue that this Court's finding regarding the 1983 Writer's Agreement is determinative of the work for hire issue and has res judicata effect. ECF No. 36 at 31–32. Second, Defendants argue that, because Plaintiff failed to list his termination rights in his 1984 bankruptcy petition, he is now estopped from

pursuing them. ECF No. 36 at 25–26.

As to the res judicata issue, this Court again finds that Defendants' argument is better characterized as one of collateral estoppel, or issue preclusion. Whether the musical compositions assigned under the 1983 Writer's Agreement are works for hire is an issue of ultimate fact rather than a cause of action itself. Moreover, this Court credits Plaintiff's argument that res judicata does not apply because the claims at issue in the Florida Litigation and the claims asserted in the current action are plainly distinct. ECF No. 45 at 8–10. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286–88 (2d Cir. 2002).

As stated above, "[c]ollateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *CSX Transp., Inc.*, 327 F.3d at 1317. The elements of collateral estoppel are: (1) the issue at stake must be identical to the one involved in the prior litigation, (2) the issue must have been actually litigated in the prior suit, (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action, and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Id.* "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id.* (quoting

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

Collateral estoppel does not apply here. This Court's finding in the Florida Litigation that Plaintiff was an "employee-for-hire" under the 1983 Writer's Agreement was not a "critical and necessary part" of its ultimate judgment. This Court could have determined that Malbiz did not have any rights to the subject musical compositions without that specific finding. Moreover, this Court did not consult the statutory definitions of "work made for hire" in making this finding but rather drew its conclusions from the agreement itself. [3] *See* ECF 36-5 at 11 (the addendum to the 1983 Writer's Agreement, containing the exact "employee-for-hire" language read on to the record in the Florida Litigation). In sum, this Court acknowledges its previous finding but does not treat it as determinative of the substantive work for hire issue.

Next, as to the bankruptcy estoppel question, Defendants argue that Plaintiff's

---

[3] This Court stated, on the record at trial, that:

The December 2nd, 1983, writer's agreement makes Mr. Clinton the equivalent of an employee-for-hire of Bridgeport with respect to the works created from that point forward during the term of the agreement. In the agreement, Mr. Clinton warrants his title to such works. In paragraph 5(a), Mr. Clinton has the full right, power and authority to enter into and perform the agreement, and to grant and vest in publisher—that is, Bridgeport—all rights referred to free and clear of any and all claims, rights and obligations, whatsoever. . . . The agreement gives no indication by Mr. Clinton that the rights to such songs belong to Malbiz rather than to Mr. Clinton."

ECF No. 36-10 at 199–200.

failure to list his termination rights as assets in his 1984 bankruptcy petition estops him from claiming them now. ECF No. 36 at 25–30. This Court disagrees. This Court finds the reasoning in *Lil' Joe Records, Inc. v. Ross*, 752 F. Supp. 3d 1287, 1302 (S.D. Fla. 2024), persuasive. In *Lil' Joe*, the court squarely addressed the issue of whether termination rights can be divested through bankruptcy. The court found they cannot because "copyright termination rights do not become a part of the bankruptcy estate because they are personal rights specifically created for the author, not property rights that can be transferred." *Id.* at 1305. As such, Plaintiff's failure to list these rights—which were not at issue in the Florida Litigation—as assets in his 1984 bankruptcy petition is immaterial.

C. The Work for Hire Issue

Defendants argue that the Westbound Sound Recordings and the Bridgeport Musical Compositions are works made for hire and therefore their copyrights to those works cannot be terminated. ECF No. 36 at 21–25, 30–32. Both sections of the 1976 Copyright Act that Plaintiff moves under expressly state that they are not applicable to works made for hire. 17 U.S.C. 203(a) ("In the case of any work other than a work made for hire. . ."); 17 U.S.C. 304(c) ("In the case of any copyright subsisting in either its first or renewal term on January 1, 1978, other than a copyright in a work made for hire. . .").

The analysis of what constitutes a work made for hire depends on when the

work was created. For works created prior to the enactment of the 1976 Copyright Act, the applicable test comes from the 1909 Copyright Act. But for works created after, the applicable test comes from the 1976 Act. *See Aquarian Found., Inc. v. Lowndes*, 127 F.4th 814, 819 (9th Cir. 2025) ("Because some works at issue predate the enactment of the 1976 Copyright Act, we apply the work-for-hire tests of both the 1909 and 1976 Acts."); *RCTV Int'l Corp. v. Rosenfeld*, No. 13-23611-CIV, 2016 WL 6818955, at *9 (S.D. Fla. Sept. 30, 2016) ("Because the works in *Corcovado* were created before January 1, 1978, the 1909 Copyright Act—not the 1976 Copyright Act—governed the issues in that case.") (citing *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 680 (2d Cir. 1993)); *Roth v. Pritikin*, 710 F.2d 934, 937–39 (2d Cir. 1983) (holding that the 1976 Copyright Act's "work for hire" provisions—which differ from the 1909 Act—are not to be applied retroactively); *Neva, Inc. v. Christian Duplications Int'l, Inc.*, 743 F. Supp. 1533, 1544 (M.D. Fla. 1990) ("The Copyright Act of 1909 as amended applies in the present case because the sound recordings were fixed prior to the effective date of the Copyright Act of 1976."). Because the works in question were created both before and after the 1976 Copyright Act was enacted on January 1, 1978, both tests are considered.

Under both the 1976 and 1909 Copyright Acts, an employer may be considered an "author" of a work, owing all rights to its copyright, when the work was made for hire. *See* 17 U.S.C. § 201(b) ("In the case of a work for made for hire,

the employer or other person for whom the work was prepared is considered the author for purposes of this title, and . . . owns all of the rights comprised in the copyright."); *Murray v. Gelderman*, 566 F.2d 1307, 1309 (5th Cir. 1978) (explaining same under the 1909 Copyright Act). The 1909 Copyright Act did not define "works made for hire," but courts have found that "[t]he crucial element in this determination appears to be whether the work was created at the employer's insistence and expense, or, in other words, whether the motivating factor in producing the work was the employer who induced its creation." *Murray*, 566 F.2d at 1310. Unlike the 1909 Act, however, the 1976 Act provides two definitions of a work made for hire:

> A "work made for hire" is—
>
> (1) a work prepared by an employee within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101. The Supreme Court has held that courts must apply principles of agency law to determine whether works were prepared within the scope of employment. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 738–41 (1989). Courts in this Circuit have utilized the Restatement (Second) of Agency in

answering the question. *See Gatewood v. Frency's Corp., Inc.*, No. 8:16-CV-340-T-36AAS, 2017 WL 4861352, at *7 (M.D. Fla. Sept. 19, 2017).

Defendants claim that the Westbound Sound Recordings and Bridgeport Musical Compositions are works made for hire based on the terms of the relevant agreements that effected the grants to Defendants. As noted above, this Court has taken judicial notice of these five agreements. ECF No. 58. However, there are several issues with Defendants' argument. First, this Court is unable to determine that the five noticed agreements cover *all* the musical works the copyrights to which Plaintiff seeks to recover. For instance, the Master List references agreements that are not currently before this Court, ECF 36-1, while the termination notices themselves list grant creation dates that do not correspond to the noticed agreements.[4] ECF 36-2, 36-3. This Court simply cannot decide, at the motion to dismiss stage, that the Westbound Sound Recordings and Bridgeport Musical Compositions are works for hire based on contractual language when the operative contracts themselves may not be before this Court.

Second, the work for hire analysis, under either test outlined above, is a fact intensive, multifactor inquiry. *See, e.g.*, *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 751–51 (listing over ten factors "relevant to determining whether a hired

---

[4] This Court recognizes that certain agreements may have granted Defendants the rights to Plaintiff's past or future musical creations. But the current record is insufficient to show conclusively which agreements governs which musical works.

party is an employee"); *Roberts v. Gordy*, 359 F. Supp. 3d 1231, 1245 (S.D. Fla. 2019) ("[B]ecause the work for hire inquiry is highly fact specific, and because there is conflicting evidence, the issue is inappropriate for resolution on summary judgment, and must be determined by a jury."). Due to the lack of certainty regarding the agreements and the fact intensive nature of the inquiry, this Court declines to decide the work for hire issue at this stage.[5]

Accordingly, Defendants' motion to dismiss Counts I and II of the first amended complaint is **DENIED**.

## II.    The Remaining Counts

The remaining counts in Plaintiff's first amended complaint are for copyright infringement, fraud, and injunctive relief. Each of these counts depends, at least in part, on the validity and effectiveness of Plaintiff's termination notices. As such, this Court's above ripeness analysis is determinative here. As explained below, because Defendants continue to own the copyrights to the Westbound Sound Recordings and a subset of Bridgeport Musical Compositions, Plaintiff cannot bring copyright infringement, fraud, or injunctive relief claims with respect to them.

---

[5] This Court recognizes that whether the Westbound Sound Recordings and Bridgeport Musical Compositions are works made for hire may be a dispositive issue in this case. While this Court cannot dispose of this issue at this stage, nothing in this Order prevents Defendants from moving for summary judgment on this issue pursuant to Federal Rule of Civil Procedure 56 and they can do so sooner rather than later.

A. Copyright Infringement

In Count III, Plaintiff claims that Defendants infringed on Plaintiff's ownership rights to the Westbound Sound Recordings and Bridgeport Musical Compositions. ECF No. 32 ¶¶ 79–87. To maintain a claim for copyright infringement, Plaintiff must show he owns a valid copyright and that Defendants copied constituent elements of the copyrighted work that are original. *Pronman v. Styles*, 645 F. App'x 870, 873 (11th Cir. 2016). Plaintiff cannot make the necessary ownership showing for certain musical works. The effective dates of termination for the copyright grants to the Westbound Sound Recordings and for a subset of Bridgeport Musical Compositions have not passed. Accordingly, while Plaintiff may hold a vested future interest in these works' copyrights by virtue of sending his termination notices, *see* 17 U.S.C. §§ 203(b)(2); 304(c)(6)(B), he does not currently have any ownership interests in them. Therefore, his copyright infringement claim relating to them is not ripe. *See Baldwin*, 2012 WL 13019195, at *2 (recognizing the distinction between suing to determine whether a notice of termination is valid and suing for the proceeds that would result after the termination becomes effective, and noting that prior to the effective date of termination, the latter claim is unripe). As for the musical works the copyright grants to which have allegedly been effectively terminated, i.e., the effective termination dates have passed, this Court finds that

Plaintiff has stated a claim for copyright infringement.

Because a portion of Plaintiff's copyright infringement cause of action states a claim, Defendants' motion to dismiss Count III of the first amended complaint is **DENIED**. *See, e.g.*, *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (recognizing "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims.") (emphasis in original). However, while Count III survives, this Court makes plain that Plaintiff does not have a cognizable claim for copyright infringement with respect to those musical works covered by copyright grants whose effective termination dates have not passed.

### B. Fraud

In Count IV, Plaintiff claims that Defendants have misrepresented that they own the Westbound Sound Recordings and Bridgeport Musical Compositions to third parties and have continued exploit the works. ECF No. 32 ¶¶ 89–96. But again, Defendants remain the rightful owners of the works for which the effective dates of termination have not passed. Accordingly, Defendants may lawfully claim ownership over and exploit these works. As for the remaining works, Defendants argue Plaintiff has not adequately plead fraud, that the statute of limitations on the claim has run, and that the past actions between the parties preclude the claim. ECF No. 33 at 33–35.

Starting in reverse order, this Court finds that the decisions in the previous

actions do not have any preclusive effect on Plaintiff's fraud claim. In short, the acts and omissions underlying the claim in this case are different, concerning Defendants' behavior *after* the copyrights were allegedly recaptured. Defendants' statute of limitations argument fails for the same reason. However, this Court agrees that Plaintiff's fraud claim has not been plead with particularity.

The Federal Rules require a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity" means a party must allege:

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*Findwhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011); *see also Datum Software, Inc. v. Citizant, Inc.*, No. 23-12538, 2024 WL 3719111, at *5 (11th Cir. Aug. 8, 2024) ("Pleading a fraud claim with particularity means 'identifying the who, what, when, where, and how of the fraud alleged.' "). Here, Plaintiff has not met this requirement. Plaintiff claims that Defendants misrepresented themselves as owners of the copyrights, ECF No. 32 ¶¶ 90–91, but fails to state when these representations were made and to whom. Plaintiff also claims that Defendants entered into agreements with third parties relating to the copyrights, ECF. No. 32 ¶ 92, but fails to identify these agreements or the third

parties with which they were made. Plaintiff argues he has satisfied Rule 9(b)'s "who, what, when, where, how" standard, ECF No. 45 at 27–29, but his nonspecific, generalized answers to each of these questions are insufficient. *See Berber v. Wells Fargo, NA*, No. 20-13222, 2021 WL 3661204, at *3 (11th Cir. Aug. 18, 2021) ("Conclusory allegations of fraud are insufficient for relief.").

Accordingly, Count IV of the first amended complaint is **DISMISSED without prejudice**. Plaintiff may amend to plead his fraud claim with particularity, solely as it relates to those works for which the effective termination dates have already passed.

### C. Injunctive Relief

In this count, Plaintiff seeks a preliminary injunction due to the alleged harm he has suffered, and continues to suffer, on account of Defendants continuing to exercise ownership rights over the Westbound Sound Recordings and Bridgeport Musical Compositions. ECF No. 32 ¶¶ 98–103. Again, Plaintiff is not entitled to injunctive relief with respect to the works for which the effective termination dates have not passed. But, more importantly, Plaintiff's injunctive relief count is improper. Aside from the generality with which Plaintiff pleads the required elements, an injunction is a remedy, rather than a separate, standalone cause of action. *See Alabama v. U.S. Army Corp. of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) (noting an injunction is a remedy potentially available only after some

independent legal right has been infringed). Moreover, under Federal Rule of Civil Procedure 65, moving for a preliminary injunction requires a separate motion beyond just the complaint. Fed. R. Civ. P. 65(a)(2). No such motions appear on this Court's docket. As such, this count is dismissed. *See CHHJ Franchising LLC v. Spaulding*, No. 823CV01979WFJAAS, 2024 WL 229406, at *7–8 (M.D. Fla. Jan. 22, 2024) (dismissing a count for preliminary injunction without prejudice and noting, "Plaintiff may seek a preliminary injunction as a properly-pled remedy.").

Accordingly, Count V of the first amended complaint is **DISMISSED without prejudice**. Plaintiff may seek a preliminary injunction as a properly-pled remedy through the appropriate procedures and solely as it relates to those works for which the effective termination dates have already passed.

III.    The Dismissal of Nine, Southfield, and Eastbound

In the motion to dismiss, Defendants argue that Defendants Nine, Southfield, and Eastbound should be dismissed from this action because the first amended complaint "does not allege any facts to support [their] liability." ECF No. 36 at 18. In response, Plaintiff contends that he alleged "a centralized, fraudulent enterprise, led and executed through these companies, that systematically misappropriated his work." ECF No. 45 at 7. This Court agrees with Defendants. Aside from allegations that Nine, Southfield, and Eastbound are owned and operated by Boladian, the first amended complaint is devoid of any facts connecting the entities to this controversy.

Plaintiff did not serve termination notices to them, nor does he explain how they specifically infringed on his copyrights or engaged in fraudulent activities. As such, they may be dismissed. *See Taylor v. Pennycuff*, No. 5:24-CV-00437-MTT-CHW, 2025 WL 605037, at *3 (M.D. Ga. Feb. 25, 2025) ("If Plaintiff makes no allegations in the body of his complaint against a named Defendant, that Defendant can be dismissed.").

Accordingly, Defendants Nine, Southfield, and Eastbound are **DISMISSED without prejudice**. Plaintiff may amend to add more specific allegations relating to Nine, Southfield, and Eastbound, if he can do so in good faith.

## MOTION TO STRIKE

Defendants move, in the alternative, to strike several allegations from the first amended complaint, namely paragraphs 6–8, 32, and 38–41. Defendants claim these paragraphs are "completely irrelevant" to the issues in the first amended complaint. ECF No. 36 at 41. This Court agrees.

Federal Rule of Civil Procedure 12(f) authorizes a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Blake v. Batmasian*, 318 F.R.D. 698, 700–01 (S.D. Fla. 2017) (citations omitted). "Granting a motion to strike is a

drastic remedy and is disfavored by the courts." *Id.* (citations omitted). Generally, a motion to strike is granted "only if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Id.* at 701. This Court has "broad discretion" in considering a motion to strike. *Morrison v. Exec. Aircraft Refinishing Inc.*, 434 F. Supp. 2d 1314, 1317–18 (S.D. Fla. 2005).

Here, the allegations that Defendants move to strike relate to an alleged decades-long fraudulent scheme perpetrated by Defendants to take advantage of Plaintiff and artists like him. This Court fails to see the relevance of these allegations to the instant dispute. This action relates to Defendants' acts and omissions *after* the copyrights were allegedly recaptured. Any alleged fraudulent activity that occurred before is irrelevant.

Accordingly, Defendants' motion to strike is **GRANTED**. Paragraphs 6, 7, 32, 38, 39, 40, and 41 are stricken in their entirety, and the reference to Defendants' "scheme" in paragraph 8 is also stricken. Plaintiff shall not include these paragraphs in any amended pleading.

## MOTION FOR SANCTIONS

Federal Rule of Civil Procedure 11(c)(1) provides that a court "may impose" a sanction for violation of Rule 11(b). Fed. R. Civ. P. 11(c)(1). The Eleventh Circuit considers a rule violation to have occurred and sanctions to be proper "(1) when a

party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (quotation omitted). Rule 11 sanctions are an "extraordinary remedy" to be exercised with "extreme caution." *Bigford v. BESM*, Inc., No. 12-61215-CIV, 2012 WL 12886184, at *2 (S.D. Fla. Oct. 12, 2012) (quoting *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)).

There is no basis for the imposition of Rule 11 sanctions in this case. This Court has determined that Plaintiff's complaint plausibly states a claim for relief, making sanctions inappropriate. *See, e.g., Okulovich v. Durham & Durham, LLP*, No. 217CV00132JMSMJD, 2017 WL 4355258, at *6 (S.D. Ind. Oct. 2, 2017) (declining to impose Rule 11 sanctions where the complaint was nonfrivolous and plausibly stated a claim for relief). Therefore, Defendants' motion for sanctions is **DENIED**.

Accordingly,

**IT IS ORDERED:**

1. Defendants' motion to dismiss, ECF No. 36, is **GRANTED in part** and **DENIED in part**. Plaintiff has twenty-one (21) days from the

date of entry of this Order to amend his complaint as ordered herein.

    a.  Defendants' motion to dismiss Counts I, II, and III is **DENIED**.

    b.  Defendants' motion to dismiss Counts IV and V is **GRANTED**. Counts IV and V are **DISMISSED without prejudice**.

    c.  Defendants' motion to dismiss Defendants Nine, Southfield, and Eastbound is **GRANTED** and Defendants Nine, Southfield, and Eastbound are **DISMISSED without prejudice**.

2.  Defendants' alternative motion to strike is **GRANTED**.

3.  Defendants' motion for sanctions, ECF No. 37, is **DENIED**.

**SO ORDERED on October 10, 2025.**

                    **s/Mark E. Walker**           
                    **United States District Judge**